## First National Bank of Pike County *v.* Department of Banking and Bank of Matamoras, Intervening Appellee.

604

Argued January 10, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Henry T. Reath,* with him *Roland Morris, Jane D. Elliott* and *Duane, Morris & Heckscher,* for appellant.

*Edward L. Symons, Jr.,* Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for appellee.

*Martin P. Snyder,* with him *Sidney L. Krawitz, Krawitz, Sigal & Ridley,* and *Morgan, Lewis & Bockius,* for intervening appellee.

OPINION BY JUDGE MENCER, March 1, 1973:

This case is an appeal from the order of the Department of Banking (Department) authorizing The

Bank of Matamoras[1] (applicant) to establish a branch bank in Milford, Pennsylvania. On December 18, 1970, applicant filed an application with the Department under Section 904(b)(iv) of the Pennsylvania Banking Code of 1965[2] for permission to establish a branch in Milford. Applicant's main office is approximately seven miles from the site of the proposed branch office.

Appellant, The First National Bank of Pike County (protesting bank), formerly The First National Bank of Milford, filed with the Department a protest to the branch application. Following a hearing on March 19, 1971, the Department, by order dated June 11, 1971, granted the application to establish the branch office. The protesting bank appealed, and we vacated this order[3] and remanded for a further hearing because prior to the first hearing the protesting bank had been denied access to certain portions of the application which were deemed confidential by the Department. Our remand was in accordance with the ruling of *Conestoga National Bank of Lancaster v. Patterson*, 442 Pa. 289, 275 A. 2d 6 (1971).

A second hearing was held on March 21, March 22, and March 23, 1972. This further hearing produced 721 pages of transcribed proceedings and involved 10 witnesses and 54 exhibits. Following the filing of briefs, the Department issued a decision and order under date of September 13, 1972, approving the application to establish the branch bank in Milford. The protesting bank filed exceptions to the decision and appealed from

---

[1] The Bank of Matamoras is a state bank organized under the laws of Pennsylvania in 1920 with its sole office in the Borough of Matamoras which is at the eastern corner of Pike County.

[2] Act of November 30, 1965, P. L. 847, §904(b)(iv), 7 P.S. §904(b)(iv).

[3] *First National Bank of Milford v. Department of Banking and Bank of Matamoras*, 4 Pa. Commonwealth Ct. 168, 286 A. 2d 480 (1972).

this order. The applicant bank filed a petition to intervene, and intervention was allowed.

Two principal issues are raised in this appeal.

# I.

## WAS THE PROTESTING BANK DENIED ITS CONSTITUTIONAL RIGHT TO A FAIR HEARING?

It is well established that the requirements of due process of law apply to administrative proceedings. *Conestoga National Bank of Lancaster v. Patterson, supra.* "Due process of law" does not readily lend itself to exact definition. However, its essential elements are "notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause." *Wiley v. Woods,* 393 Pa. 341, 351, 141 A. 2d 844, 849-50 (1958). Each factual situation must be closely examined to determine the applicability of the principle of due process.

We have here made a careful and close examination of the record made of the hearings held in this case and have satisfied ourselves that the protesting bank was not denied its constitutional right to a fair hearing. It is true that in a few instances evidence can be found in the record of comments of the hearing examiner, borne of impatience and irritation, that could arguably be indicative of bias, but a total review of the record leads only to the conclusion that the protesting bank was afforded a full and fair opportunity to present its case.

We do not believe that any of the five contentions advanced by the protesting bank relative to the fairness of the hearing have merit. However, we will comment briefly on two of these contentions. It is asserted that the time for cross-examination allowed to the protesting bank was severely limited. This contention is di-

rected to the conduct of the second hearing since the first hearing on the merits of the application was free of any limitations as to the right of cross-examination.

The rules of the Department governing branch application procedures provide that the hearing examiner shall determine the time to be expended upon each witness' presentation at hearings. Vol. 1, *Pennsylvania Bulletin,* page 2287. The right to limit cross-examination has been recognized in Pennsylvania to be within the sound discretion of the trial judge and absent injury to the party complainant it is not grounds for reversal. *Besecker v. General Acceptance Corporation,* 143 Pa. Superior Ct. 367, 17 A. 2d 916 (1941). Here we believe the time limitations imposed were reasonable, and the protesting bank has not persuaded us that the few limitations imposed were prejudicial to its rights. An examination of the record readily establishes that the protesting bank had an ample opportunity to cross-examine all witnesses and that, if any error resulted in this regard, it was harmless in nature.

We would also comment on the Department's failure to subpoena documents as requested by the protesting bank in the form of a telegram to the Department sent on Saturday, March 18, 1972, and received by the Department on March 20, 1972, just one day before the second hearing scheduled to commence on Tuesday, March 21, 1972.[4] The request was for the issuance of a subpoena to the applicant bank to produce at the hearing full records identifying each of its customers in Pike County by both name and address, type of account maintained by such customer with the applicant bank, current amounts and account activity of each such account.

We conclude that this request was properly denied. The lateness of the request, combined with its lack of

---

[4] The parties were notified of the time of this hearing on January 31, 1972.

relevancy to the hearing, as well as the confidential nature of the information sought, constituted sufficient basis for the Department's refusal of the request. We might mention in this regard that our remand for a further hearing was to provide the protesting bank the opportunity to present evidence and to further cross-examine witnesses after having access to all of the application and supporting data submitted to the Department by the applicant bank. We directed a further hearing to supplement the first hearing rather than a de novo hearing.

## II.

WERE THE DEPARTMENT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT THERE IS A NEED FOR THE BANKING SERVICES AND FACILITIES TO BE PROVIDED BY THE PROPOSED BRANCH BANK SUPPORTED BY SUBSTANTIAL EVIDENCE?

The test or standard for the grant or refusal of a branch bank is whether there is a need of the community to be served for banking services or facilities such as are contemplated by the establishment of such branch. *Ritter Finance Company, Inc. v. Myers*, 401 Pa. 467, 165 A. 2d 246 (1960). The term, "services or facilities," is broadly inclusive and embraces everything, both tangible and intangible, that will be made available by the bank proposing to establish the branch in order to supply the needs of the community for banking services.

We discussed in *A. P. Weaver and Sons v. Sanitary Water Board*, 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971), the standard by which a court tests the substantiality of the evidence upon which findings of fact are based. The evaluation of the considerable evidence in this case is a formidable task. We approached our responsibility here, mindful of what our Supreme

Court aptly said in *Blairsville National Bank v. Myers,* 409 Pa. 526, 533-34, 187 A. 2d 655, 659 (1963):

"A Supreme Court cannot be a Secretary of Banking or a Department of Banking or a Banking Board. These men are not only experts in the technical field of banking, but they may have knowledge of intangibles and imponderables, of strengths and weaknesses which may exist in a particular bank or in the broad banking situation in that banking area which are not clearly or definitely or concretely disclosed in the cold, bare record. For these reasons much must be left to the discretion of the Secretary of Banking or, as the case may be, to the Banking Board.

"We are well aware of the accuracy of the statements in Philadelphia Saving Fund Society v. Myers, 406 Pa., supra, where the Court said (pp. 449-450): 'The question of whether there is a need for the services and facilities of an additional bank or branch is sometimes a delicate and difficult one. The dangers inherent in any situation which may possibly or likely create an overbanked area that may likely weaken or destroy some existing banks to the detriment of depositors, creditors, stockholders, and the public alike, must never be forgotten or minimized. . . . " '. . . Part of the powers and duties of the Department of Banking . . . is to determine . . . whether the community served and from which a bank draws its depositors and clients has adequate banking facilities and is not overbanked . . . ". . . the clear intention of the statute . . . is the same: to guard against 'overbanking' on the one hand, and 'underbanking' on the other; . . . ." ' " However, we appropriately added: ' "Where a Board [or Department] is composed of able and experienced experts who are dealing with technical questions, a Court should be loath to find a clear abuse of discretion upon a subject or subjects as to which they are far better qualified than any

Court." ' " Such deference to experience concerning banking needs is no less applicable to the Department.

With these admonitions and guidelines in mind, we have carefully read the entire record and, notwithstanding the able argument of counsel for the protesting bank, the evidence was amply sufficient to support and justify the findings of fact and the conclusions of law and the order of the Department, and we find no abuse of discretion or error of law.

There can be no doubt that Pike County generally, and the southeastern section of the county specifically, is experiencing rapid and substantial growth. All economic and growth indicators are favorable and foretell an expanding and developing future for the area involved here. Statistics showing substantial increases in recent years in population, land transactions, bank deposits, major highway improvements (Interstate 84), recreational facilities development (Tock's Island project of the Delaware Water Gap National Recreation Area), assessed property valuations, tax receipts, new housing construction, personal income, and value added by local manufacturing concerns, were introduced into the record and support a finding of need for additional banking services and facilities in the community area.

The Department's decision and order were in accord with the criteria of Section 905 of the Banking Code of 1965, 7 P.S. §905, and the cases that have dealt with the standards for meeting the requirements of need in accordance with the applicable statute. *Dauphin Deposit Trust Company v. Myers*, 401 Pa. 230, 164 A. 2d 86 (1960); *Philadelphia Saving Fund Society v. Myers*, 406 Pa. 438, 179 A. 2d 209 (1962); *Blairsville National Bank v. Myers, supra.*

The order of the Department of Banking in approving the branch office for The Bank of Matamoras is affirmed.