**NORTH CHESTNUT HILL NEIGHBORS,**
Appellant

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF PHILADELPHIA and Woodmere Art Museum.**

Commonwealth Court of Pennsylvania.

Argued June 10, 2009.
Decided July 8, 2009.

S. David Fineman, Philadelphia, for appellant.

Peter F. Kelsen, Philadelphia, for appellee, Woodmere Art Museum.

BEFORE: SIMPSON, Judge, FRIEDMAN, Senior Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

North Chestnut Hill Neighbors (Neighbors) appeal from the January 27, 2009, order of the Court of Common Pleas of Philadelphia County (trial court), which affirmed the December 24, 2007, remand decision of the Zoning Board of Adjustment of the City of Philadelphia (ZBA). In its remand decision, the ZBA made supplemental findings of fact and conclusions of law and reaffirmed its prior February 24, 2006, decision granting a variance to the Woodmere Art Museum (Woodmere or Museum) to permit construction of a proposed addition to the Museum. We affirm.

Woodmere is an art museum housed in a five-story Victorian mansion situated on approximately five and one-half acres in the Chestnut Hill area of Philadelphia. The property currently is zoned R–1 Residential, where, pursuant to section 14–205 of the Philadelphia Zoning Code (Zoning Code), only single-family detached residential use is permitted. Because Woodmere was used as an art museum prior to the enactment of the Zoning Code, it existed as a nonconforming use. However, over the years, Woodmere has applied for and received several variances related to its operation as an art museum and, therefore, has lost its status as a nonconforming use pursuant to Zoning Code § 14–104(4)(b).[1]

On February 26, 2004, Woodmere applied for a permit to build a two-story addition with a cellar for use as an art museum on the first and second floor, with art storage and maintenance in the cellar; a one-story addition for use as an accessory mechanical room for erection of an oil tank; reconfiguration of the private parking lot with a new total of eighty-two spaces; and a retail gift shop, all as part of the existing Museum, with an accessory office, instructional classes and an accessory storage shed. (ZBA's 2/24/06 Findings of Fact, No. 1.) The Department of Licenses and Inspections refused the permit, explaining that the requested uses are not permitted in the R–1 District but are extensions of uses previously approved by the ZBA that also require the ZBA's approval. (ZBA's 2/24/06 Findings of Fact, No. 2.)

Woodmere appealed, arguing that the proposed expansion satisfies the criteria for the grant of variance relief pursuant to section 14–1802 of the Zoning Code[2] and constitutes a reasonable modification of

---

1. Section 14–104(4)(b) of the Zoning Code provides that a "non-conforming structure or use shall cease to be considered as such whenever it becomes the subject of a variance, granted by the [ZBA] or ordered by a Court, and its non-conforming status shall not be reinstated thereafter."

2. The ZBA is authorized to grant variances from the terms required by the Zoning Code that "will not be contrary to the public inter-

prior ZBA approvals. Neighbors opposed the grant of the variance,[3] and the ZBA held four public hearings on the matter. (ZBA's 2/24/06 Findings of Fact, Nos. 3–4.) In its Findings of Fact, the ZBA summa-

rized the testimony of the various witnesses, but made no *specific* credibility determinations or findings based on the summarized testimony.[4] Thereafter, in a unanimous opinion, the ZBA granted

est, where, owing to special conditions, a literal enforcement of the provisions of this Title would result in unnecessary hardship...." Zoning Code § 14–1801(1)(c). Section 14–1802 of the Zoning Code lists the criteria to be considered by the ZBA in granting a variance under section 14–1801(1)(c). In relevant part, those criteria are:

(a) that because of the particular physical surrounding, shape, or topographical conditions of the specific structure or land involved, a literal enforcement of the provisions of this Title would result in unnecessary hardship;

(b) that the conditions [on] which the appeal for a variance is [sic] based are unique to the property for which the variance is sought;

(c) that the variance will not substantially or permanently injure the appropriate use of adjacent conforming property;

(d) that the special conditions or circumstances forming the basis for the variance did not result from the actions of the applicant;

(e) that the grant of the variance will not *substantially increase congestion in the* public streets;

. . .

(i) that the grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park or other public facilities;

(j) that the grant of the variance will not adversely affect the public health, safety or general welfare;

(k) that the grant of the variance will be in harmony with the spirit and purpose of this Title; and

(*l*) that the grant of the variance will not adversely affect in a substantial manner any area redevelopment plan approved by City Council or the Comprehensive Plan for the City approved by the City Planning Commission.

Zoning Code § 14–1802(1).

**3.** Neighbors are owners of twenty-six homes in the vicinity of Woodmere who incorporated and hired counsel to oppose Woodmere's planned addition.

**4.** Instead, the ZBA stated that it "heard and considered" the testimony presented. Testimony was offered by numerous witnesses; however, the testimony most relevant for our current purposes includes that offered by: Eva Lew, an architect with the firm of Venturi Scott Brown, which was designing the addition; Dr. Michael Schantz, Woodmere's director; and Larry S. Waetzman, a land planner retained by Neighbors.

Lew presented photographs showing that the proposed addition of 25,000 square feet would not be any closer to the property lines than the current 55,000 square-foot building. Lew testified that the edges of the property are heavily treed, that these trees would be maintained and that new trees would be added to block the view of the building; she explained that the design takes advantage of the topography, in order to make the new elements less visible to the surrounding neighbors, and she said that the parking area will be designed so that lighting will point away from neighboring homes. (ZBA's 2/24/06 Findings of Fact, Nos. 10–11.)

Dr. Schantz testified about Woodmere's mission to foster and promote local arts, and he stated that the Museum is an asset to the community in that it has an exceptional collection and also provides children's and other educational programs. Dr. Schantz testified that the mansion is unsuited for many of the activities conducted, and the Museum's current accreditation by the American Association of Museums is in jeopardy because it does not have enough visitor amenities, storage or display space. Dr. Schantz explained that in constructing the addition, the intent is not to provide more visitation or educational facilities but, rather, to better accommodate the Museum's present uses and an attendance increase of 6% per year. Dr. Schantz stressed that Woodmere has agreed with community representatives to limit the size and number of special rental events at the Museum. Dr. Schantz also testified that storm water runoff from the property is a serious problem that will be addressed and corrected with construction of the addition. (ZBA's 2/24/06 Findings of Fact, Nos. 18–19, 27.)

Waetzman testified that: the Museum's project will impact on the quiet nature of the

Woodmere's variance request, subject to certain provisos, and the trial court affirmed on appeal.

Neighbors then appealed to this court. Alleging numerous failures on the part of the ZBA, Neighbors argued that the ZBA erred and/or abused its discretion by granting Woodmere the requested variance and, thereby, allowing Woodmere to construct the proposed Museum addition. Among Neighbors' issues on appeal was whether the ZBA failed to consider Woodmere's variance request under the appropriate standards.

In considering the issue, we first observed that the trial court correctly recognized, and the parties essentially agreed, that this case is governed by the variance criteria set forth in section 14–1802(1) of the Zoning Code. *North Chestnut Hill Neighbors v. Zoning Board of Adjustment,* 928 A.2d 418 (Pa.Cmwlth.2007). Quoting our supreme court's decision in *East Torresdale Civic Association v. Zoning Board of Adjustment,* 536 Pa. 322, 324–25, 639 A.2d 446, 447 (1994), we recognized that, "the criteria [set forth in section 14–1802(1) ] can be boiled down into three key requirements, that of: 1) unique hardship to the property; 2) no adverse effect on the public health, safety or general welfare; and 3) the variance will represent the minimum variance that will afford relief at the least modification possible." *North Chestnut Hill,* 928 A.2d at 425.

We then addressed Neighbors' further argument that the ZBA erred or abused its discretion in finding that Woodmere satisfied all three of these requirements. We concluded that the ZBA's findings on the first two criteria, unnecessary hardship and detriment to the public, were amply supported by substantial evidence in the record. *North Chestnut Hill.* However, we agreed with Neighbors' contention that the ZBA erred in failing to make any findings of fact with respect to the third element, i.e., whether the variance was the minimum that would afford relief. We also agreed with Neighbors that the ZBA's findings and conclusions were inadequate with regard to the dispute concerning whether the Museum's proposed expansion complies with, or needs to comply with, the parking and screening requirements set forth respectively in sections 14–1402(7) and 14–1402(9) of the Zoning Code. Therefore, we held that a remand was required so that the ZBA might address and make findings with respect to "whether the proposed construction is the minimum that would afford relief to Woodmere and to resolve disputes over alleged Zoning Code noncompliance with regard to parking and screening." *North Chestnut Hill,* 928 A.2d at 427.

On remand, the ZBA held no additional hearings; instead, in its December 24, 2007, remand decision, the ZBA incorporated its February 24, 2006, Findings of

residential neighborhood; the parking plan for the addition does not comply with the Zoning Code, which requires at least sixty-four spaces for the addition alone and 183 spaces for the entire building; the plan for overflow parking is chaotic; the headlights from the new parking area will shine into adjacent residences; and the overflow parking will impact nearby residences. However, on cross-examination, Waetzman acknowledged that he did not speak to anyone about the actual parking or traffic flow needs of the Museum but based his report solely on his

own interpretation of the Zoning Code. He admitted that the Zoning Code section he relied on might be inapplicable because museums are not permitted uses in an R–1 District, but he would not retract his opinion that the parking was inadequate. Waetzman refused to concede that a large buffer separates the Museum from the nearest residence or that trees would be preserved; he admitted that he is not a civil engineer and is unaware of the storm water issues. (ZBA's 2/24/06 Findings of Fact, Nos. 28–29.)

Fact and Conclusions of Law and issued eleven Supplemental Findings of Fact and eight Supplemental Conclusions of Law based on the existing record. In the supplemental findings, the ZBA summarized relevant portions of the record testimony, credited all the evidence and testimony presented by the Museum and rejected the testimony of Neighbors' expert, Larry S. Waetzman.[5] (ZBA's 12/24/07 Findings of Fact, Nos. 2–5, 7–11.)

Upon consideration of the credible evidence, the ZBA found that: the Museum needs the expansion to continue to function as a museum that meets current industry standards and the requirements of the Zoning Code; the size of the proposed expansion is the minimum necessary to enable the Museum to exhibit its permanent collection, meet current industry standards and comply with Zoning Code requirements; Zoning Code sections 14–1402(7) and 14–1402(9), relating to parking and screening, were not applicable because the Museum is not a *permitted* use in the R–1 Residential District;[6] and the Museum's proposed parking and landscaping

5. The ZBA summarized the relevant testimony as follows.

2. The [ZBA] heard and considered the testimony of Eva Lew, architect, of Venturi Scott Brown, that the proposed plan for the expansion would cover only 12 percent of the lot; that the addition would not change the relationship between the lot and Bells Mill Road or the existing property lines. (N.T. 11/10/04, p. 14–15). (See also [2/24/06] Findings of Fact, Nos. 10 and 11).

3. The [ZBA] heard and considered the testimony of Dr. Michael Schantz, Director of the Museum, that the proposed expansion would compensate for deficiencies which were identified in a master plan done in 1986; the plan recognized that the 19th century mansion in which the Museum was housed was deficient for the purposes of a modern museum. Specifically, for example, the expansion would create space for the current uses of the Museum, including, visitor facilities, exhibitions, public programs, children's activities, archival storage, accommodations for volunteers; and would address the storm water runoff problems. (N.T. 3/2/05, p. 9–12). (See also [2/24/06] Findings of Fact, No. 18).

4. The [ZBA] heard the testimony of Ms. Lew that the expansion will provide the space for back-up activities which most museums have. Ms. Lews [sic] testified that museums typically have about two-thirds space for art and one-third space for back-up activity and Woodmere does not have the designated space for any back-up activity. (N.T. 3/2/05, p. 127).

7. The [ZBA] heard and considered the testimony of Ms. Lew that the edges of the property abutting adjacent properties are currently heavily treed and buffered; that the Museum will maintain many of the existing trees and landscaping; and that additional trees will be added in locations selected by the neighbors. (N.T. 11/10/04, p. 19).

8. On the issues of parking and landscaping, the [ZBA] heard and considered the testimony of Ms. Lew that the proposed parking ratio exceeds 1 space per 1,000 square feet of gross floor area. Ms. Lew also testified that the parking area will be landscaped to provide additional shrubs planted at car headlight height to prevent any light intrusion upon neighboring properties. (N.T. 11/10/04, p. 25–26). (See also [2/24/06] Findings of Fact, No. 31.)

9. The [ZBA] finds that the testimony of [Neighbors'] expert, Larry S. Waetzman, was not credible as he relied upon unreliable data to form his opinions, and lacked the qualifications to render an opinion on the issues upon which he testified. The [ZBA] further finds that Section 1402(7) of the Zoning Code, upon which Mr. Waetzman relied, is inapplicable since museums are not permitted uses. (See [2/24/06] Findings of Fact, No. 29).

(ZBA's 12/24/07 Findings of Fact, Nos. 2–4, 7–9; R.R. at 750a–51a.)

6. Section 14–1402 of the Zoning Code is titled Parking in Residential Districts. Subsection 7, titled Non-residential Uses in Certain Residential Districts, provides that "[p]arking spaces in accordance with the requirements of this Chapter shall be provided for *permitted* non-residential uses erected or extended after the effective date of this ordinance...." (Emphasis added.) Subsection 9, titled Driveways, Aisles, Walkways, Screening,

plans, which were based on a study of the needs of the Museum and the surrounding neighborhood, were adequate. (ZBA's 12/24/07 Findings of Fact, Nos. 5, 6, 9–11; ZBA's 12/24/07 Conclusions of Law, Nos. 6–7.) Accordingly, the ZBA concluded that Woodmere met its burden of proving all three of the elements needed for the grant of a variance and, once again, granted Woodmere's variance request, subject to the same provisos as before. Neighbors appealed to the trial court, which affirmed the ZBA by order dated January 27, 2009. Neighbors now appeal to this court.[7]

■ Neighbors argue that the ZBA did not adequately address, or issue findings sufficient to comply with, the Commonwealth Court's remand order that the ZBA determine "whether the proposed construction is the minimum that would afford relief to Woodmere and to resolve disputes over alleged Zoning Code noncompliance with regard to parking and screening."[8] *North Chestnut Hill*, 928 A.2d at 427.

First, Neighbors argue that the ZBA abused its discretion and committed an error of law in finding that the 25,000 square foot addition to the Museum was the minimum variance needed. According to Neighbors, this court set an exacting standard for measuring the minimum variance on remand in *North Chestnut Hill* when we stated, "[a]lthough the record contains testimony that Woodmere's present nineteenth-century building does not contain or allow for certain amenities and facilities found in 'modern' art museums, the ZBA did not indicate in its summaries of testimony that a thriving institution demands a certain amount of display space, requires storage and meeting areas of a specific size or that an addition smaller than the one proposed will not suffice to meet Woodmere's needs." *North Chestnut Hill*, 928 A.2d at 426–27. Neighbors assert that the ZBA failed to follow these objective guidelines[9] and, instead, concluded that Woodmere's proposed construction was the minimum necessary based solely on an amorphous concept of modernizing the Museum.

Neighbors also maintain that the objective standards the ZBA did rely on to justify its conclusion on minimum variance were inappropriate. In that regard, the ZBA states as follows:

Landscaping and Lighting, provides that "[p]arking facilities accessory to multi-family buildings and *permitted* non-residential uses shall comply with the following requirements." (Emphasis added.)

7. Where, as here, the trial court takes no additional evidence, this court's scope of review is limited to determining whether the ZBA committed an abuse of discretion or an error of law. *Money v. Zoning Hearing Board*, 755 A.2d 732 (Pa.Cmwlth.2000). A conclusion that the zoning board abused its discretion may be reached only if the zoning board's findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

8. Neighbors list nine different issues in their Statement of Questions Involved; however,

all these issues may be fairly subsumed within the single issue stated here.

9. With regard to objective criteria, Neighbors assert that Woodmere's own witnesses presented the only objective standard referenced in the record; specifically, Robert Venturi and Eva Lew, architects on the Museum project, testified that museums generally devote two-thirds of their space to art and one-third to back-up functions and that the addition would provide the space for back-up activities that currently was nonexistent at the Museum. (ZBA's 2/24/06 Findings of Fact, No. 23, ZBA's 12/24/07 Findings of Fact, No. 4.) However, Neighbors contend that the ZBA never determined whether this two-thirds, one-third criteria was met; in fact, according to Neighbors' calculations, (Neighbors' brief at 23–27), Woodmere's proposed expansion greatly exceeds this industry standard.

[Woodmere] has met its burden of proof that the variance will represent the minimum that will afford relief at the least modification possible. [Woodmere] has submitted credible evidence that the entire building with the expansion will occupy only twelve (12) percent of the lot, well below the thirty-five (35) percent coverage allowed by the Code; that only four (4) additional parking spaces will be created; that many of the trees existing on the property will be retained; that the building with the expansion will bear the same relationship to the property lines as the current building does; that the design of the building minimizes the impact on the surrounding neighborhood; and that the Museum has agreed to limit and restrict rental of the Museum space pursuant to an Agreement with the local civic association.

(ZBA's 12/24/07 Conclusions of Law, No. 6.) Challenging this conclusion, Neighbors argue that: building size (25,000 square feet), not lot coverage, is at issue in determining minimum variance; providing less parking than required under the Zoning Code should not be rewarded under the minimum variance test; and Woodmere's own plans show that the expansion will not bear the same relationship to the property lines as the current building.

In sum, Neighbors assert that to meet its burden on the minimum variance issue, the Museum needed to lay out its needs in detail and then explain how each was redressed in the most minimal fashion by the proposed construction. Claiming that the existing record did not contain such evidence, Neighbors contend that the ZBA was required to hold additional hearings in order to adequately address the issue on remand as directed by this court. This

was not done, and Neighbors argue that absent such information, the ZBA had no factual basis to support its conclusion that Woodmere's requested changes meet the minimum variance standard.

Woodmere counters that, taken as a whole, the existing record provides ample support for the ZBA's determination regarding minimum variance. Woodmere notes that the Museum's current physical condition and functionality indisputably fail to meet its present needs or current accreditation standards, and Woodmere reiterates the credited testimony provided by Dr. Schantz, the Museum's Director, regarding the need for the proposed addition to maintain Woodmere's status as a viable art museum. Specifically, Dr. Schantz stated that the addition would rectify previously identified deficiencies in the current structure and allow Woodmere's transformation into a properly functioning museum capable of protecting its *existing* art collection, supporting its *existing* activities and keeping its *existing* national accreditation.[10] Further, Woodmere cites Lew's credible testimony that the addition was specifically designed to fulfill Woodmere's needs in a way that would have the least impact on the surrounding land uses. Lew testified regarding the need for, and use of, space to meet industry and Zoning Code standards; in addition, she established that the building height, setbacks from property lines and lot coverage are all far below the maximum permitted under the Zoning Code. Testimony also was presented to establish that Woodmere met with community representatives and adjusted its plans to best accommodate both the needs of the Museum and the concerns of the community, so that the Museum's

---

**10.** Woodmere again stresses that the proposed addition will address the Museum's need for archival space, office and work space, designated educational space, "back-of-house" storage space, required amenities (such as restrooms) and a remedy for stormwater runoff problems. (Woodmere's brief at 24–25.)

proposed addition now enjoys community support.

According to Woodmere, Neighbors' argument amounts to little more than a dispute over credibility and the weight of the evidence. Where, as here, a trial court takes no additional evidence, the ZBA is vested with exclusive fact finding authority, and, therefore, is the sole arbiter of credibility and evidentiary weight. *Domeisen v. Zoning Hearing Board*, 814 A.2d 851 (Pa.Cmwlth.2003). Here, the ZBA, acting in its role as fact finder, weighed the evidence presented, made credibility determinations, applied the law and concluded that the variance was justified as the minimum that would provide Woodmere relief. Woodmere contends that Neighbors have isolated facts from the record and presented alternative interpretations of those facts in an effort to divert the court from its real task, i.e., to determine whether the totality of the evidence before the ZBA was sufficient to support its findings and conclusions regarding the minimum variance element.[11]

In compliance with this court's directive in *North Chestnut Hill*, the ZBA, on remand, supplements its original decision by making additional findings and credibility determinations leading to its conclusion that Woodmere's proposed expansion is the minimum that will afford relief. Although the ZBA did not express its opinion in terms of the specific number of square feet that would be required to meet the Museum's undeniable need to modernize, such precision is neither required nor possible. Instead, we are satisfied that the ZBA carefully reviewed the entire record and that there is substantial evidence therein to support its decision. So long as the record demonstrates that there was no manifest abuse of discretion, the judgment of the ZBA should receive deference.[12] *Silar v. Zoning Board of Adjustment*, 46 Pa.Cmwlth. 340, 407 A.2d 74 (1979). We agree with Woodmere and the trial court that, based on the totality of the evidence in the existing record, the ZBA did not err or abuse its discretion by concluding that the requested variance was the minimum that would afford Woodmere relief and, thus, the grant of the variance was proper under Zoning Code § 14–1802.

Next, Neighbors argue that the ZBA erred and/or abused its discretion in failing to identify the Zoning Code sections applicable to parking and screening as directed by this court on remand.[13] Neigh-

---

11. The trial court agreed with Woodmere's characterization. In affirming the ZBA, the trial court stated, "Neighbors, in arguing that the ZBA was incorrect in its determination that this was the minimum variance required to provide relief, did so in a picayune fashion, relying on portions of testimony and evidence taken out of context. In making its decision, the ZBA examined the entire record. This is the standard required." (Trial ct. op. at 3; R.R. at 953a.)

12. Neighbors also challenge Supplemental Findings of Fact, No. 5, in which the ZBA found that all the testimony and evidence presented by the Museum was credible and that it needs the expansion to continue to function as a museum that meets current industry standards and the requirements of the Zoning Code. According to Neighbors, this blanket acceptance of all facts put forward by Woodmere reveals the ZBA's bias and its abuse of discretion because the finding is bla-

tantly contradicted by certain physical and legal realities and because it reflects the ZBA's refusal to address and resolve inconsistencies and conflicts between the credited testimony and other evidence in the record, including Woodmere's own site plan. However, we agree with Woodmere that, in making this claim, Neighbors mischaracterize testimony and unjustifiably question the integrity of the ZBA.

13. In *North Chestnut Hill*, we noted the dispute concerning whether Zoning Code §§ 14–1402(7) and 14–1402(9) applied and whether the Museum's expansion complied with the parking and screening requirements set forth in those sections. We then stated, "[t]he ZBA's findings do not identify the section of the Zoning Code that controls or the evidence relied upon to determine that the applicable requirements were satisfied. On remand, the ZBA should also make these necessary findings and legal determinations." *North Chestnut Hill*, 928 A.2d at 427.

bors recognize the ZBA's finding that Zoning Code §§ 14–1402(7) and 14–1402(9) do not apply in this case because Woodmere is not a permitted use in the R–1 District. However, Neighbors point out that the ZBA fails to explain why the Museum, a former nonconforming use that has previously received variances, is not "permitted" in that residential district. Moreover, Neighbors maintain that by failing to identify any alternative sections of the Zoning Code that are applicable, the ZBA implicitly concludes that there simply are no rules governing parking and screening when a variance is considered for a prior non-conforming use in a residential district, a concept that Neighbors call unworkable. According to Neighbors, sections 14–1402(7) and 14–1402(9) of the Zoning Code do apply, and Woodmere's proposed parking and landscaping plans do not meet the requirements set forth therein.

■ Woodmere counters that the ZBA correctly determined that sections 14–1402(7) and 14–1402(9) are inapplicable here, that the ZBA applied the appropriate standards and that the ZBA identified sufficient evidence to support a conclusion that the Museum's proposed addition includes adequate parking and screening. We agree.

Although non-residential uses are permitted in certain residential districts, there are *no* non-residential uses permitted in an R–1 District. Therefore, contrary to Neighbors' contention, the ZBA did not err or abuse its discretion in concluding that the Museum was not subject to the specific parking and screening requirements set forth in those sections. Moreover, by suggesting that the ZBA applied no standards at all to judge the adequacy of Woodmere's parking and screening, Neighbors mischaracterize the ZBA's decision. As the ZBA recognized, in cases where, as here, the grant of prior variance relief has caused property to lose its nonconforming status, Zoning Code § 14–104(4)(b), the ZBA must approve further development pursuant to Zoning Code § 14–1802. (ZBA's Supplemental Conclusions of Law, No. 2.) Here, the ZBA reviewed the record evidence relating to parking and screening and determined that Woodmere's plans for parking and screening were adequate to satisfy the needs of the Museum without adversely affecting the surrounding land uses. In doing so, the ZBA credited Lew's testimony that the edges of the property abutting adjacent properties, which currently are heavily treed and buffered, will be maintained and that Woodmere will add additional trees in locations selected by neighboring property owners. Moreover, the ZBA accepted Lew's testimony that the proposed parking ratio, which exceeded one space per 1,000 square feet of gross floor area, will be sufficient for the Museum's intended use and that the parking area will be landscaped to provide screening at car headlight height so that light will not intrude upon neighboring properties. (ZBA's 12/24/07 Findings of Fact, Nos. 7–8.) These findings are supported by sufficient evidence contained in the record, and they support the ZBA's conclusion that Woodmere provided adequate parking and screening for its expansion.

Accordingly, we affirm.

### ORDER

AND NOW, this 8th day of July, 2009, the order of the Court of Common Pleas of

Philadelphia County, dated January 27, 2009, is hereby affirmed.