IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laurent S. Bass, Mark D. Goulian,    :
Kellie L. Boyles, Katherine C.        :
Altshuler, Gail K. Lopez-Henriquez,  :
and Robert S. Molinaro,           :
                  Appellants    :
                          :
         v.               :
                          :
Zoning Board of Adjustment of the   :   No. 2179 C.D. 2013
City of Philadelphia              :   Submitted: July 3, 2014

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                  FILED: August 12, 2014

       Laurent S. Bass (Bass), Mark D. Goulian (Goulian), Kellie L. Boyles (Boyles), Katherine C. Altshuler (Altshuler), Gail K. Lopez-Henriquez (Henriquez) and Robert S. Molinaro (Molinaro) (collectively, Objectors) appeal from the Philadelphia County Common Pleas Court's (trial court) November 8, 2013 order affirming the Philadelphia Zoning Board of Adjustment's (ZBA) order denying their appeal. Objectors present six issues for this Court's review: (1) whether the ZBA abused its discretion by denying Objectors' counsel's continuance request; (2) whether the ZBA violated Objectors' due process rights by interfering with Henriquez' testimony; (3) whether the ZBA violated the Local Agency Law (Law)[1] and Objectors' due process rights and abused its discretion by not letting Henriquez cross-examine witnesses; (4) whether substantial evidence supports the ZBA's

---

[1] 2 Pa.C.S. §§ 551–555, 751–754.

decision; (5) whether the trial court erred by assuming that an application for special exception cannot be opposed through evidence of noise, violence and vandalism; and (6) whether the ZBA's decision was valid. After review, we affirm.

On October 25, 2012, ELD Leasing Corporation (Applicant) applied to the Philadelphia Department of Licenses and Inspections (L&I) for a zoning/use registration permit to open a sit-down bar/restaurant (Charlie's Pub) at 17 North Third Street, Philadelphia (Property). For 17 years, Applicant had operated Charlie's Pub at 114 North Third Street, approximately a block and a half away. Applicant's lease expired in 2011 and it sought to relocate Charlie's Pub to the Property.

Because the Property is located within the Center City/Old City Residential Area District, its proposed use required a special exception pursuant to Section 14-502(2).2 of the Philadelphia Zoning Code (Zoning Code). Accordingly, L&I referred the matter to the ZBA. Applicant appealed from the referral to the ZBA on November 19, 2012. On January 29, 2013, the ZBA held a public hearing on the matter (ZBA Hearing). The ZBA issued a Notice of Decision (Decision) on February 26, 2013, granting Applicant a special exception to open the proposed bar/restaurant with provisos, which included ventilating the kitchen through the roof and storing trash within the building until one hour before trash pick-up. Objectors, various Church Street homeowners, appealed from the ZBA's Decision to the trial court on March 20, 2013. The trial court heard argument on November 6, 2013 and, without taking any additional evidence, on November 8, 2013, affirmed the ZBA's Decision. Objectors appealed to this Court.[2]

---

[2] Where, as here, the trial court takes no additional evidence, this court's scope of review is limited to determining whether the ZBA committed an abuse of discretion or an error of law. A conclusion that the zoning board abused its discretion may be reached only if the zoning board's findings are not supported by substantial evidence.

2

Objectors first argue that the ZBA abused its discretion in denying their counsel's timely continuance request. Specifically, Objectors contend that their counsel informed the ZBA that he had a pre-paid business trip out of the country, yet the ZBA failed to timely rule on the request by waiting until the date of the hearing. At the hearing, Applicant opposed the continuance request and the ZBA proceeded to hear the case. "The decision to grant or deny a request for a continuance is within the sole discretion of the [presiding officer]. As a result, our review is limited to determining whether the [presiding officer] abused [her] discretion." *D.Z. v. Bethlehem Area Sch. Dist.*, 2 A.3d 712, 734 (Pa. Cmwlth. 2010) (citations omitted).

> Objectors maintain:
>
> [T]he request for continuance was made as soon as counsel knew he was being asked to appear at the hearing. He sent the request to the [ZBA] by fax and mail on January 23, just a day after OCCA [Old City Civic Association] reversed itself and voted not to oppose the Application,[3] and the day after he was retained by the various homeowners on Church Street.

Objectors Br. at 14. Objectors further assert that "[t]he [ZBA] could easily have ruled on the request prior to January 29 but elected not to rule until after the hearing had convened and counsel had left the country." *Id.* at 15. Reading the above in a vacuum infers that the ZBA intentionally disregarded the request of newly retained counsel, and deliberately waited until the date of the hearing to impede Objectors. This argument is disingenuous as evidenced by the record herein.

---

*N. Chestnut Hill Neighbors v. Zoning Bd. of Adjustment of the City of Phila.*, 977 A.2d 1196, 1201 n.7 (Pa. Cmwlth. 2009) (citations omitted).

[3] The inference here is Objectors only retained counsel because on January 23, 2013 the OCCA decided not to oppose the application. However, the OCCA's decision not to oppose the proposal was conditional and on February 5, 2013, the OCCA officially withdrew its support for the application. *See* Reproduced Record at 189a.

First, the ZBA is impartial and has no reason to hinder the Objectors. *See Newtown Twp. Bd. of Supervisors v. Greater Media Radio Co.*, 587 A.2d 841, 844 (Pa. Cmwlth. 1991) (The ZBA is "an impartial decision-making tribunal."). Second, while counsel maintains that he was recently retained by various homeowners on Church Street, he omits the fact that one of those homeowners is his wife, Henriquez, and that he too resides on Church Street. *See* Objectors Reply Br. at 6 ("It is correct that [Objectors'] counsel lives on Church Street . . . ."). Third, Objectors' counsel's decision to represent Objectors when he knew he was not available to be present at the scheduled hearing was counsel's choice and does not translate into an abuse of discretion by the ZBA. *See* Rules of Prof. Conduct 1.16, Explanatory Com. ("A lawyer should not accept representation in a matter unless it can be performed competently, **promptly**, without improper conflict of interest and to completion."). Fourth, the fact that one **requests** a continuance, in no way guarantees it will be granted. *See D.Z.*, 2 A.3d at 734 ("The decision to grant or deny a request for a continuance is within the sole discretion of the [presiding officer]."). The prudent course of action is to proceed on known facts which in this matter are the hearing date was fixed and it is within the tribunal's discretion whether to grant the continuance request. Lastly, one of the Objectors, Henriquez, who had been involved in the case since its inception and was present at the hearing is also an attorney. *See* Objectors Br. at 8 ("[Henriquez] was herself an experienced lawyer . . . ."). Knowing her husband, Objectors' counsel, at the time he agreed to represent Objectors' interests would be unavailable on the day of the previously scheduled hearing, Henriquez could have sought other counsel or she herself being an experienced lawyer could have represented Objectors at the ZBA Hearing. Regardless, the ZBA is not and cannot be held responsible for a party selecting counsel who at the time he agrees to represent the client knows he is not available for the scheduled hearing.

4

Objectors' counsel stated in his January 23, 2013 letter requesting the continuance that his "office ha[d] just been retained[,]" although he had been "familiar with the matter and its previous cases[.]" Reproduced Record (R.R.) at 197a; January 23, 2013 letter. In fact, Objectors' counsel had been participating in the case as an interested party since its inception. R.R. at 187a. Further, Objectors' counsel lives on the same block as the Property. *Id.* Notice of the hearing was posted on the property on January 8, 2013 announcing the January 29, 2013 hearing; thus, counsel had 21 days advance notice of the hearing date. However, counsel's continuance request letter was not faxed and mailed to the ZBA until January 23, 2013. Moreover, according to Objectors' counsel's letter, the basis for the continuance, the trip, "had been scheduled for some time[.]" R.R. at 197a. Given all the above circumstances, including the fact that only Objector Henriquez appeared at the ZBA Hearing and all the other Objectors submitted letters of support opposing the application before the hearing date, we discern no abuse of discretion in the ZBA's denial of Objectors' counsel's continuance request.

Objectors next assert that the ZBA violated Objectors' due process rights by interfering with Henriquez' testimony. Specifically, Objectors maintain that the ZBA repeatedly interrupted Henriquez, argued with her, and prevented her from testifying in her own words.[4] We disagree.

> Due process principles apply to administrative proceedings, and require an opportunity, among other things, to hear the evidence adduced by the opposing party, cross-examine witnesses, introduce evidence on one's own behalf, and present argument. As our Supreme Court explained, 'there must be notice, an opportunity to present one's cause, a

---

[4] Objectors claim the ZBA's interference with Henriquez' testimony "reduc[ed] it to a 'list of issues.'" Objectors Br. at 24. However, referring to the specific facts in Henriquez' testimony as issues is clearly nothing more than a distinction based on semantics, especially considering that Henriquez concluded her testimony by stating: "I think those cover my **issues**." R.R. at 45a; Notes of Testimony, January 29, 2013 at 20 (emphasis added).

proceeding appropriate to the character of the particular case, and an adjudication of the same nature as is present in other cases. Where these things are present there is due process of law.' *Petition of Kariher, . . .* 131 A. 265, 270 ([Pa.] 1925).

*D.Z.*, 2 A.3d at 720 (citation omitted). As the presiding officer in an administrative hearing, the ZBA Chairperson Lynette M. Brown-Sow (ZBA Chairperson) had the authority and responsibility to regulate the course of the hearing and to take any action necessary or appropriate in the discharge of her duties. 1 Pa. Code § 35.187. During questioning by the ZBA Chairperson, Henriquez testified as follows:

> [ZBA Chairperson]: Tell me the issues that you are opposing.
>
> [Henriquez]: Yes. I have lived on Church Street for 30 years. I appeared here before the [ZBA] approximately two years ago when these same applicants –
>
> [ZBA Chairperson]: **What are the issues that you have with this, ma'am?**
>
> [Henriquez]: My issues are that they intend to operate a bar/restaurant serving alcohol until two o'clock in the morning and that they are - -
>
> [ZBA Chairperson]: Time is an issue?
>
> [Henriquez]: Well, the fact that they intend to sell alcohol until two o'clock in the morning, and the proximity to the bars and night clubs on 2nd Street, which already are creating a very serious problem of safety, and noise, and impairment of quality of life.
>
> [ZBA Chairperson]: Bars on North 2nd Street?
>
> [Henriquez]: No, the bars that are just south of Market Street on 2nd Street.
>
> [ZBA Chairperson]: So you're concerned about this creating more noise for the bars that are on the south side of Market Street?

6

[Henriquez]: If this is allowed to open at the corner of 3rd and Church, the people who are congregating on 2nd Street and on Market – there are also bars on Market Street where people congregate outside.

[ZBA Chairperson]: **I understand. What are your other issues?**

[Henriquez]: My issues are that those inebriated patrons are going to come here –

[ZBA Chairperson]: **Ma'am, I heard that issue. What is your other issue?**

[Henriquez]: My other issues are safety of the drunk people underneath my window who create noise, the fact that they leave trash and vomit on my doorsteps, the fact that drunk people commit vandalism on my property.

[ZBA Chairperson]: This is happening now?

[Henriquez]: Yes. And another bar opening on my corner is going to increase that problem. The parking is right underneath my bedroom window. So when the bars close at two o'clock in the morning –

[ZBA Chairperson]: Is there a parking lot just underneath your bedroom window?

[Henriquez]: There's a parking lot. It's not my parking lot but there is a parking lot –

[ZBA Chairperson]: It's a 24-hour parking lot?

[Henriquez]: Yes, it is. And people leaving the bars –

[ZBA Chairperson]: It is a new parking lot or it's always been there?

[Henriquez]: No. It's been there for quite some time. The problem has been exacerbated over the past ten years with the increasing numbers [sic] of bars. Prior to the change in the Zoning Code, they could not have opened a bar there.

[ZBA Chairperson**]: Ma'am, you're not an expert on Code. Just give me your issues living in the community**.

> So I already have safety, serving alcohol at two o'clock, parking. I have loading, noise and trash, late hours.
>
> [Henriquez]: Vandalism. We do have acts of vandalism.
>
> [ZBA Chairperson]: This bar isn't even there? I have safety. **Do you have anything else?**
>
> [Henriquez]: **I think those cover my issues.**

R.R. at 42a-45a; Notes of Testimony, January 29, 2013 (N.T.) at 17-20 (emphasis added). Based upon the above testimony, we conclude the ZBA Chairperson did not repeatedly interrupt Henriquez, argue with her, or prevent her from testifying in her own words. The ZBA Chairperson merely directed the witness to remain focused on the issues relating to her objection to Applicant's proposed use. In doing so, the ZBA did not violate Objectors' due process rights.

> Objectors further contend that
>
> > the letter [Henriquez submitted prior to the hearing] is a proffer as to how she would have testified. It shows specific information based on personal knowledge as to how the problems are associated with the late night closing of the bars, and how the problems have increased over the years as the number of bars and nightclubs have increased. She also would have testified how, based on personal experience, the opening of a bar on the Western mouth of Church Street will increase disruption on the street as bar patrons move from bars on Second Street to the new premises, or from the new premises to the parking lot next to the Vestry Condominiums on Church Street.

Objectors Br. at 32. However, a review of Henriquez' letter and Henriquez' testimony reveals that the proffer does not contain new or different information than that to which Henriquez testified to at the hearing. As both are part of the certified record, this contention does not support a violation of Objectors' due process rights.

Objectors further maintain that the ZBA violated the Local Agency Law and Objectors' due process rights, and abused its discretion in denying Henriquez the

right to cross-examine witnesses. Specifically, Objectors declare that this denial "requires that the [ZBA's] decision be vacated." Objectors Br. at 39. We disagree. It is well settled that due process includes the right to cross-examine witnesses. *D.Z.* However, "[t]he right to limit cross-examination has been recognized in Pennsylvania to be within the sound discretion of the [presiding officer] and absent injury to the party complainant it is not grounds for reversal." *First Nat'l Bank of Pike Cnty. v. Dep't of Banking*, 300 A.2d 823, 825 (Pa. Cmwlth. 1973). Further, Section 14-303(14)(h) of the Zoning Code provides: "The [ZBA] may determine the order of testimony and may establish time limits on testimony in order to allow interested parties to be heard and **may, in its discretion, prevent duplicative testimony**." (Emphasis added). Moreover, Section 14-303(14)(j) of the Zoning Code states: "**Attorneys representing applicants or objectors** . . . will be permitted to cross-examine . . . ." (Emphasis added).

Objectors selected counsel who at the time counsel agreed to represent their interests knew he was not available to appear at the ZBA Hearing. Henriquez who informed the ZBA that she was an attorney, specifically testified: "I'm not here as an attorney. My attorney requested the continuance." R.R. at 28a; N.T. at 3. In addition, Henriquez only requested to ask one question of the last witness. As evidenced by the hearing transcript, she did not request to ask a single question during the first 50 pages of the 62 page transcript. Henriquez' cross-examination request arose during Evan Sharps' (Sharps) testimony that he has a business at 233 Church Street, he knows Applicant's owner and he has no objection to the project. Specifically, Sharps testified: "I am totally in favor of this project going on. I have known [Applicant's owner] for a long time. I do believe he can run a very clean, organized business. I see no negative impact on the neighborhood." R.R. at 73a; N.T. at 48.

9

Thereafter, Applicant's attorney asked the ZBA Chairperson if he could ask an important follow-up question. When the ZBA Chairperson said yes, he addressed Sharps as follows: "You heard [Henriquez] speak regarding the problems on Church Street that she's experienced over the last 30 years and particularly accelerating over the last few years. Do you experience those same problems? You open your business there every[ ]day; correct?" *Id.* Sharps responded that he did open his business in that area every day and acknowledged the problems that Henriquez delineated, but explained that he believed the problems could be alleviated. *Id.* Joseph Beller (Beller), counsel for the residents and management of Wister Alley, Craft House and Sugar Refinery, all of which are located in the immediate vicinity of the Property, subsequently cross-examined Sharps. It was after Beller's cross-examination of Sharps that Henriquez addressed the ZBA Chairperson: "May I ask the witness a question?" R.R. at 76a; N.T. at 51. The ZBA Chairperson responded that she could not. Henriquez had made it emphatically clear at the outset of the hearing that "[she was] not [t]here as an attorney." R.R. at 28a; N.T. at 3. Henriquez never proffered, at that time or in her brief, what question(s) she was going to ask, nor did she explain what injury was caused by her inability to inquire.[5]

The record makes clear that Objectors were afforded an opportunity to participate in a full, open and fair hearing and that the ZBA Chairperson was reasonable in controlling the conduct of the hearing. Consequently, the denial of Henriquez' request to ask one question near the end of the hearing was not an abuse of discretion, particularly in light of Henriquez' failure to explain any harm that she

---

[5] Objectors also argue that their counsel's continuance request was denied and that this denial in conjunction with the refusal to allow Henriquez to cross-examine the last witness near the end of the hearing was prejudicial. However, as discussed above, Objectors' counsel, Henriquez' husband, who lived on Church Street near the Property was aware of the hearing date and his unavailability to attend the hearing at the time he decided to accept the representation; therefore, this argument cannot stand.

suffered as a result of this procedural ruling. Accordingly, vacating the ZBA's Decision on this ground is not warranted.

Objectors next argue that the ZBA's Decision is not supported by substantial evidence. Specifically, Objectors contend that since they were denied due process only the Applicant's evidence was considered. Thus, Objectors claim there was no way they could have carried their burden of proof. We disagree. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N. Chestnut Hill Neighbors v. Zoning Bd. of Adjustment of the City of Phila.*, 977 A.2d 1196, 1201 n.7 (Pa. Cmwlth. 2009).

Section 14-303(7)(e) of the Zoning Code provides:

(.1) Specific Conditions of Use.

**The applicant shall have the initial duty of presenting evidence, and the burden of proof, that the proposed use meets the definition for a use permitted by special exception** . . . .

(.2) Specific Detrimental Impacts on the Neighborhood.

**The applicant shall have the initial duty of presenting objective evidence, and the burden of proof, that the grant of a special exception will not cause the following specific detrimental impacts to the neighborhood beyond that which normally might be expected from the proposed use**:

(.a) Congestion in the public streets or transportation systems;

(.b) Overcrowding the land;

(.c) Impairing an adequate supply of light and air to adjacent property;

(.d) Burdening water, sewer, school, park, or other public facilities;

(.e) Impairing or permanently injuring the use of the adjacent conforming properties;

11

(.f) Endangering the public health or safety by fire or other means; or

(.g) Inconsistency with the Comprehensive Plan of the City.

(.3) General Detrimental Impacts on the Neighborhood.

**Once the applicant meets such initial duty and burden of proof, the objectors, if any, shall have the duty of presenting objective evidence, and the burden of proof, that the proposed use is substantially likely to cause a detrimental impact on the health, safety, and welfare of the neighborhood exceeding that which normally might be expected from the proposed use** . . . .

(Emphasis added).

In the instant case, Applicant submitted the testimony of Gene Stein (Stein), the property owner next to the Property who also was in favor of the proposed use, Olde City District Executive Director Graham Copeland who supported the application, and Sharps. In addition, Applicant submitted letters defending the proposal from Holiday Inn Hotel Manager June Seminario, Stein and Sharps; a petition containing in excess of 50 signatures advocating the reopening of Charlie's Pub at the Property; and a petition from patrons at the old location backing the move.[6]

In opposition, Objectors presented Henriquez' testimony. In addition, Objectors submitted letters from Altshuler, Goulian and Boyles, Henriquez, and Bass explaining their objections to Applicant's requested special exception. Brad Begelman, whose company manages residential properties in the area, also testified against the proposed use. Further, Objectors had 3 weeks from the date of the ZBA Hearing to submit any other evidence they wished to present. They presented no additional evidence. Moreover, the residents and management of Wister Alley, Craft

---

[6] Applicant also submitted documents required to meet his burden of proof under Section 14-303(7)(e)(.1) of the Zoning Code.

12

House and Sugar Refinery who were represented at the ZBA Hearing also had the same opportunity to submit other evidence in the 3 weeks following the hearing.[7]

As stated in its February 26, 2013 Decision, the ZBA considered all of the above evidence, and found that Applicant had met its burden of proof and Objectors did not. "[W]e are satisfied that the ZBA carefully reviewed the entire record and that there is substantial evidence therein to support its decision. So long as the record demonstrates that there was no manifest abuse of discretion, the judgment of the ZBA should receive deference." *N. Chestnut Hill Neighbors*, 977 A.2d at 1203. After a thorough review of the record, and based upon the evidence cited above, we conclude there was no manifest abuse of discetion.

Objectors next contend that the trial court erred by assuming that an application for special exception cannot be opposed through evidence of noise, violence and vandalism. We disagree. The trial court's opinion does not reveal that it made such an assumption. The trial court held that Objectors had not met their burden of proof because they "merely provided evidence at the ZBA Hearing with respect to *current* conditions in the neighborhood making the assumption that another bar in the area would cause an increase in safety and noise issues." Trial Ct. Op. at 9.

Under Section 14-303(7)(e)(.3) of the Zoning Code, Objectors were required to "present[] objective evidence . . . that the proposed use is substantially likely to cause a detrimental impact on the health, safety, and welfare of the neighborhood **exceeding that which normally might be expected** from the proposed use . . . ." (Emphasis added). As the trial court properly opined: "[Objectors] made no attempt to demonstrate how the particular proposal in this matter would cause a detrimental impact beyond what is to be expected from an establishment of its type." Trial Ct. Op. at 9. Thus, we discern no error.

---

[7] The record does not reveal that they presented any additional evidence.

13

Finally, Objectors allege that the ZBA's Decision was invalid because it cannot be ascertained which members heard the evidence or voted on the outcome. Specifically, Objectors maintain that because the transcript indicates that in addition to the ZBA Chairperson, ZBA Members Samuel Staten (Staten), Martin Bednarek (Bednarek) and Greg Pastore (Pastore) were present at the hearing, and the ZBA Decision designates the voters as ZBA Chairperson, Carol Tinari (Tinari), Bednarek, and Pastore, a remand is necessary. We disagree.

On February 20, 2014, ZBA Attorney Sharon Suleta (Suleta) executed an affidavit stating:

> 1. That a hearing on the underlying zoning appeal was held before the [ZBA] on January 29, 2013;
>
> 2. That [ZBA] members [ZBA Chairperson], [Staten], [Bednarek] and [Pastore] were present at the January 29, 2013 hearing;
>
> 3. That the matter was voted by the [ZBA] on February 26, 2013;
>
> 4. That members in attendance and participating in the February 26, 2013[] vote were [ZBA Chairperson], [Bednarek], [Pastore] and [Tinari];
>
> 5. That due to a clerical error, the [ZBA Decision] filed with [the] Court mistakenly identified the voting [ZBA] members as [Tinari], [Staten], [Bednarek] and [Pastore];
>
> 6. That the appeal was properly voted and a special exception granted for the [Property], as reflected by the official vote sheet filed with the Court; and
>
> 7. That the [ZBA's Decision] w[as] otherwise accurate.

R.R. at 209a. Section 14-303(14)(c) of the Zoning Code provides: "No action shall be taken by the [ZBA] unless at least three members of the [ZBA], present at the time of the vote, concur." Further, "administrative agencies have the inherent authority to correct obvious typographical and clerical errors." *Bruno v. Zoning Bd. of*

*Adjustment of the City of Phila.*, 664 A.2d 1077, 1079 (Pa. Cmwlth. 1995). Here, the transcript, the ZBA Decision and Suleta's affidavit all state that the ZBA Chairperson and ZBA members Bednarek and Pastore were present at the hearing and for the vote, and all three concurred. Therefore, the ZBA's Decision was valid.

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laurent S. Bass, Mark D. Goulian,     :
Kellie L. Boyles, Katherine C.     :
Altshuler, Gail K. Lopez-Henriquez,     :
and Robert S. Molinaro,     :
                Appellants     :
    :
        v.     :
    :
Zoning Board of Adjustment of the     :    No. 2179 C.D. 2013
City of Philadelphia     :

# O R D E R

AND NOW, this 12th day of August, 2014, the Philadelphia County Common Pleas Court's November 8, 2013 order is affirmed.

 

_____
ANNE E. COVEY, Judge