**D.Z., Petitioner**

v.

**BETHLEHEM AREA SCHOOL DISTRICT, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 11, 2009.

Decided July 27, 2010.

Kathryn E. Potalivo, Philadelphia, for petitioner.

Glenna M. Hazeltine, Bethlehem, for respondent.

BEFORE: COHN JUBELIRER, Judge, SIMPSON, Judge,[1] and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In these consolidated appeals, D.Z. seeks review of two orders of a Special Education Hearing Officer (Hearing Officer). Through those orders, the Hearing Officer: (i) granted Bethlehem Area School District (School District) permission to reevaluate D.Z.'s son, M.Z. (Student), concerning his status as both a gifted student and a special education student under Pennsylvania and federal law; and, (ii) denied D.Z.'s complaint challenging the School District's implementation and appropriate design of Student's individualized education plan (IEP)[2] and gifted individualized education plan (GIEP)[3] for three school years.

■ In these appeals, D.Z., whose native language is Mandarin Chinese, and who proceeded without counsel below, but

1. This case was reassigned to the author on April 28, 2010.

2. The Individuals with Disabilities Education Act (IDEA), requires that for a state to receive federal assistance thereunder, it must provide a child with disabilities a "free appropriate public education" based on the unique needs of the student. 20 U.S.C. § 1412; *Kozak v. Hampton Twp. Sch. Dist.*, 655 A.2d 641 (Pa. Cmwlth.1995). The IDEA establishes minimum requirements for the education of children with disabilities. *Id.* To implement those requirements, the Commonwealth, through the Department of Education, promulgated the Pennsylvania Special Education Regulations and the Pennsylvania Special Education Standards. *Id.* Pursuant to state regulations, a school district must develop an IEP tailored in accordance with certain procedures for each child with a disability. *Id.*

3. Title 22, Chapter 16 of the Pennsylvania Code sets forth extensive requirements for drafting GIEPs, including identifying the gifted child, completing a multi-disciplinary evaluation and reevaluation, and writing a GIEP with the student, the student's parents and representatives from the school district. *B.C. ex rel. J.C. v. Penn Manor Sch. Dist.* 906 A.2d 642 (Pa.Cmwlth.2006). The GIEP is to include: (1) a statement of the student's present levels of educational performance; (2) annual goals and short-term learning outcomes which are responsive to the student's needs as identified in the evaluation report; (3) a statement of the specially designed instruction and support services that the student will receive; (4) projected dates for initiation and duration of the GIEP services; (5) objective criteria, assessment procedures, and timelines to determine whether the student has met the goals and learning outcomes; and, (6) the names of the persons who helped draft the GIEP and the date of the meeting. *Id.*

is now represented, raises a host of procedural issues. Specifically, she argues the Hearing Officer erred in: prohibiting her from speaking English during the proceedings; failing to appoint a certified interpreter or "otherwise qualified interpreter" and failing to replace an ineffective interpreter; denying her due process by failing to address all the issues raised and by excluding relevant evidence; denying her continuance request; and, imposing unreasonable time constraints on the proceedings. Upon review, we affirm.

The matters between these parties have a complicated and convoluted history. We summarize the relevant portions of this history as follows.

At the time of the proceedings before the Hearing Officer, Student was a seventh grade student, residing within the School District. Student was identified as a child with a disability under federal and Pennsylvania special education legislation. Additionally, Student qualified as a gifted student under Pennsylvania educational legislation.

The School District sought permission to reevaluate (PTRE) Student with regard to both his special education and gifted education. The School District last fully evaluated Student when he was in first grade. D.Z. opposed the School District's reevaluation request.

In December 2008, the School District filed for a due process hearing with the Pennsylvania Department of Education, Office of Dispute Resolution, seeking permission to reevaluate Student.

Shortly thereafter, D.Z. filed a complaint seeking a due process hearing, asserting, among other things, the School District inappropriately designed and implemented Student's IEP and his GIEP for all or parts of the 2006–2007 (5th grade), 2007–2008 (6th grade), and 2008–2009 (7th grade) school years. D.Z. also voiced her concern that Student's disability was masking his gifted ability. The School District filed a motion to consolidate D.Z.'s complaint with its complaint. The Hearing Officer granted this request.

At the outset of the proceedings, the Hearing Officer granted D.Z.'s request for the services of an interpreter. Two different interpreters were used in the multiple hearings at issue here. Specifically, for the February 24, March 5, and May 19, 2009 hearings, Ms. Danmeng Lin served as the interpreter. For the April 1 and 2, 2009 proceedings, Ms. Jing Chen served as the interpreter.

Although D.Z. requested partial translation on an as-needed basis for clarification purposes during the proceedings, the Hearing Officer determined partial translation, if provided only as needed by D.Z., would be confusing and problematic. Thus, the Hearing Officer required that D.Z. speak only her native language during the proceedings, and that all spoken English by any hearing participant or official be interpreted into D.Z.'s native language.

The interpreters appointed by the Hearing Officer were not officially certified under Pennsylvania law. Among other factors, the ordered translation procedure resulted in protracted proceedings before the Hearing Officer.

After participating in several of the spirited hearings, but prior to their completion, the School District sought to de-consolidate the cases. The Hearing Officer granted de-consolidation in his decision on the School District's complaint (Hearing Officer Decision I), explaining:

It was the intention of the parties and this hearing officer to render an interim decision on the re-evaluation issue [within the School District's complaint]. Because [the School District's complaint]

requires a final decision and this case has been consolidated with [D.Z.'s complaint] at a separate complaint number, however, a final decision could not be rendered; in effect, the "interim" decision would have been a final decision in this matter, and the consolidation of the cases would not allow for that.

On May 12, 2009, the District filed a motion to "de-consolidate" the two cases. [D.Z.], wishing to receive a final decision on the re-evaluation, did not object.

Hearing Officer Decision I at 3–4.

As a result, the Hearing Officer held hearings on the School District's complaint on February 24, March 5, April 1, and April 2, 2009.[4] At the initial hearing, D.Z. asserted she was seeking an Independent Educational Evaluation (IEE) of Student based on her belief that the School District's prior "assessments" were inappropriate or inaccurate because they did not accommodate Student's disabilities.[5]

Additionally, throughout the proceedings, D.Z. repeatedly objected to the Hearing Officer's preclusion of her communication in English when she was able to do so. The Hearing Officer overruled the objections. Thereafter, the Hearing Officer issued Decision I, granting the School District's request for PTRE and ordering that

Student undergo a broad reevaluation in order to update and inform his IEP and GIEP planning.

Also, as the 2008–2009 school year drew closer to an end, the Hearing Officer issued a separate May 14, 2009, ruling defining the scope of the upcoming proceedings on D.Z.'s complaint. That ruling excluded certain of the 23 witnesses (mostly School District employees) D.Z. sought to present on relevance grounds, and it placed time restrictions on both parties for the presentation of evidence for the remaining hearing dates on D.Z.'s complaint. *See* Reproduced Record (R.R.) at 215a–216a. Specifically, the ruling limited D.Z.'s challenge solely to the implementation of Student's IEP and GIEP, excluded issues regarding the appropriateness of the IEP and GIEP based upon prior adjudications addressing these issues, and excluded issues relating to the need for an audiological assessment and an autism specialist for Student. *Id.*

The Hearing Officer conducted hearings on D.Z.'s complaint on February 24 (prior to de-consolidation) and May 19, 2009 (following de-consolidation). At the outset of the May 19 hearing, D.Z. objected to the Hearing Officer's May 14 ruling limiting

---

**4.** The first hearing on February 24, 2009, was a hearing for both parties' complaints. Subsequent hearings were directed toward only one of the two complaints, as noted within the Hearing Officer's decisions.

**5.** The permission to reevaluate (PTRE) sought by the School District contemplates a broad reevaluation primarily performed by a licensed school psychologist using standardized tests administered in a standardized manner. There are also classroom observations conducted by the school psychologist, and there may be medical input, such as an audiological evaluation. Some information is also received from parents and from teachers. This broad reevaluation is not performed by a guidance counselor, principal, teacher,

speech therapist, occupational therapist or director of special education services. Therefore, this reevaluation is different from the periodic "assessments" of which D.Z. complains.

The Independent Educational Evaluation (IEE) sought by D.Z. is essentially the same type of broad evaluation which is performed by a licensed school psychologist not employed by the School District, but which is paid for by public funds. Accordingly, both the School District and D.Z. sought a broad reevaluation of Student by a licensed school psychologist at public expense, with the identity of the evaluator being the only obvious point of disagreement.

the scope of the proceedings and asserted that given those limitations she was unable to proceed.[6] R.R. at 94a. D.Z. argued the relevant issues the Hearing Officer identified were different from the issues she presented in her complaint, and, as a result, she was unprepared to question the limited witnesses allowed by the Hearing Officer. R.R. at 94a–95a.

D.Z. repeatedly and unsuccessfully renewed her objections, and she again expressed her inability to present her case, as well as her intention not to continue her participation in the hearing. R.R. at 95a.

The Hearing Officer cautioned D.Z. that her refusal to participate would result in termination of the proceedings. He further informed D.Z. that at that point she had not met her burden of proving the allegations in her complaint. *Id.* The Hearing Officer also instructed D.Z. that if the proceedings were terminated based on her refusal to participate, the issues presented within her complaint would not be heard again in any future due process proceedings. *Id.* D.Z. reiterated her inability to participate, at which point the Hearing Officer informed her that he considered her case concluded and ended the hearing. *Id.*

The Hearing Officer subsequently issued a decision dismissing D.Z.'s complaint, with prejudice, on the ground that D.Z. did not meet her burden of proof (Hearing Officer Decision II).

Representing herself, D.Z. appealed to this Court from both of the Hearing Officer's orders. This Court consolidated the appeals. D.Z. then retained counsel, who filed a brief on her behalf.

On appeal,[7] D.Z. raises six issues, with numerous sub-issues. Essentially, D.Z. asserts the Hearing Officer: (i) denied her due process by prohibiting her from speaking English during the hearing; (ii) erred in failing to appoint a certified interpreter or "otherwise qualified interpreter" and failing to replace an ineffective interpreter; (iii) denied her due process by failing to address all the issues she raised and by excluding relevant evidence and testimony; (iv) denied her due process by refusing her request for a continuance; and, (v) denied her due process by imposing unreasonable time constraints on the hearing. D.Z. also questions whether the combination of errors that occurred below resulted in a denial of due process.

■ Because the assignments of error advanced by D.Z. are primarily procedural in nature, we note that "the mere demonstration of a potential procedural error, without also alleging a resulting harm, is not sufficient reason to disturb an agency adjudication." *Seltzer v. Dep't of Educ.*, 782 A.2d 48, 53 (Pa.Cmwlth.2001). Thus, with regard to alleged procedural errors, the question is not merely whether such an error occurred, but rather whether any such error was prejudicial or caused harm to the complaining party. *See, e.g., Capital BlueCross v. Ins. Dep't*, 937 A.2d 552 (Pa.Cmwlth.2007), *appeal denied sub nom., Sklaroff v. Ario*, 600 Pa. 106, 963 A.2d 906 (2009).

Further, as explained above, D.Z. proceeded without counsel for the duration of

---

6. D.Z. also asserts she made the same objections, via email or telephone, to the Hearing Officer in the days preceding the May 19 hearing.

7. Our review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704: *Lower Merion Sch. Dist. v. Doe*, 878 A.2d 925 (Pa.Cmwlth.2005), *aff'd*, 593 Pa. 437, 931 A.2d 640 (2007).

the proceedings before the Hearing Officer. Thus, in considering D.Z.'s assertions, we remain mindful of our Supreme Court's statement that "any layperson choosing to represent [herself] in a legal proceeding must, to some reasonable extent, assume the risk that [her] lack of expertise and legal training will prove [her] undoing." *Vann v. Unemployment Comp. Bd. of Review*, 508 Pa. 139, 148, 494 A.2d 1081, 1086 (1985); *see also Barber v. Tax Review Bd.*, 850 A.2d 866 (Pa.Cmwlth. 2004).

## I. Use of Interpreters

D.Z. first argues the Hearing Officer denied her due process in the proceedings on both complaints by prohibiting her from speaking English, and by requiring her to speak only her native language with translation provided by the appointed interpreters. D.Z. asserts she requested an interpreter only for a limited range of translation, and the interpreters were consistently unable to accurately translate language that D.Z. proficiently understood, both in Chinese and in English. D.Z. concedes, both implicitly in her initial request for interpretive services, and expressly to this Court, that she needed interpretive services for certain words and phrases, including, certain educational and legal terms of art, and for certain colloquialisms used during the proceedings. D.Z. also contends the Hearing Officer erred in barring her from correcting translations she felt the interpreters incorrectly expressed.

The School District responds that D.Z.'s argument that she was denied due process on the ground the Hearing Officer required her to use interpreters, which she herself requested, is disingenuous. The School District asserts the Hearing Officer maintained the right to place reasonable restrictions on D.Z.'s use of interpreters in order to advance the proceedings. The School District further argues D.Z. cannot show prejudice resulting from the Hearing Officer's instructions regarding the use of the interpreters and, absent a showing of prejudice, D.Z. cannot successfully show a denial of due process. The School District emphasizes that the Hearing Officer's requirements in using the interpreters enabled a full and fair hearing in which D.Z. could, and did, in fact, participate. The School District asserts the Hearing Officer did not deny D.Z. an opportunity to understand or fully participate in the proceedings. The School District also points to the Hearing Officer's explanation for his decision regarding the full use of the interpreters, which, he explained, was to avoid confusion, create an understandable record and ensure D.Z.'s full understanding and participation.

■ Due process principles apply to administrative proceedings, and require an opportunity, among other things, to hear the evidence adduced by the opposing party, cross-examine witnesses, introduce evidence on one's own behalf, and present argument. *Kowenhoven v. Cnty. of Allegheny*, 587 Pa. 545, 901 A.2d 1003 (2006). As our Supreme Court explained, "there must be notice, an opportunity to present one's cause, a proceeding appropriate to the character of the particular case, and an adjudication of the same nature as is present in other cases. Where these things are present there is due process of law." *Petition of Kariher*, 284 Pa. 455, 470, 131 A. 265, 270 (1925).

■ Further, "[t]he constitutionally protected rights afforded by due process, which apply to administrative proceedings . . . includes the right to be heard which, in certain circumstances, include the right to assistance from an interpreter during the proceedings itself." *Bethlehem Area*

*Sch. Dist. v. Zhou*, 976 A.2d 1284, 1286 (Pa.Cmwlth.2009).

■■■ The concept of due process is a flexible one and imposes only such procedural safeguards as the situation warrants. *LaFarge Corp. v. Ins. Dep't*, 557 Pa. 544, 735 A.2d 74 (1999); *Fountain Capital Fund, Inc. v. Pa. Secs. Comm'n*, 948 A.2d 208 (Pa.Cmwlth.2008), *appeal denied*, 600 Pa. 765, 967 A.2d 961 (2009). Demonstrable prejudice is a key factor in assessing whether procedural due process was denied. *State Dental Council & Examining Bd. v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974); *Messina v. E. Penn Twp.*, 995 A.2d 517 (Pa.Cmwlth.2010) (*en banc*); *In re McGlynn*, 974 A.2d 525 (Pa.Cmwlth.2009).

With certain exceptions not applicable here, in proceedings before administrative agencies, the General Assembly expressly authorized the provision and control of interpretive services for persons in need of such services. *See* 2 Pa.C.S. §§ 561–568 (Administrative Proceeding Interpreters for Persons with Limited English Proficiency). While our courts limited their address of the impact of interpretive services upon a party's due process rights to criminal defendants,[8] a logical reading of the due process right to be heard in administrative proceedings can be read to encompass the General Assembly's legislative scheme for the employment of interpretive services when needed.

The statutory provisions regarding appointment of an interpreter for an administrative proceeding fully protected D.Z.'s right to due process by ensuring her an opportunity to be heard. D.Z. does not challenge the constitutionality of the statutory scheme governing appointment or re-

placement of interpreters for administrative proceedings. *Allied Mech. & Elec., Inc. v. Pa. Prevailing Wage Appeals Bd.*, 923 A.2d 1220 (Pa.Cmwlth.2007) (statutes are presumed constitutional, and a party challenging the constitutionality of a statute has a heavy burden of persuasion); *Shapiro v. State Bd. of Accountancy*, 856 A.2d 864 (Pa.Cmwlth.2004) (same). As such, D.Z.'s due process rights were protected by the statutory provisions affording her access to an interpreter for the proceedings here, which are presumed constitutional in the absence of any challenge to those statutory provisions.

Further, once the Hearing Officer afforded D.Z. her right to an interpreter, the Hearing Officer's decision regarding the specific procedures for utilizing that interpreter was purely a matter of discretion. Indeed, Section 35.187 of the General Rules of Administrative Practice and Procedure vests the presiding officer of an administrative tribunal with authority to regulate the course of the proceedings, including the disposition of procedural matters. 1 Pa.Code § 35.187. Here, the Hearing Officer in no way limited D.Z.'s access to an interpreter through any of his procedural rulings. D.Z.'s preference for a lesser grant of her right to an interpreter amounts to little more than an attempt to infringe on the Hearing Officer's authority to regulate the course of the proceedings. Clearly, D.Z. cannot do so.

■■■ As to our review of the Hearing Officer's discretionary decision in using the interpreters, we review such decision-making for abuse of discretion. *See Slawek v. State Bd. of Med. Educ. & Licensure*, 526 Pa. 316, 586 A.2d 362 (1991). This is a

---

8. *See, e.g., Commonwealth v. Pana*, 469 Pa. 43, 364 A.2d 895 (1976) (criminal defendant's ability to use an interpreter encompasses numerous fundamental rights, including those implicating due process). Also, within the context of criminal proceedings, our Supreme

Court has noted, but not directly addressed, the use of an interpreter by a non-native-English-speaker on an apparent as-needed, and not exclusive, basis. *See Commonwealth v. Reyes*, 582 Pa. 317, 331–332, 870 A.2d 888, 897 (2005).

high standard, requiring this Court to abide by the agency's decision absent "bad faith, fraud, capricious action or abuse of power." *Id.* at 321, 586 A.2d at 365. "The fact that [a] reviewing court may have a different opinion is not sufficient to interfere with the agency's action and judicial discretion may not be substituted for administrative discretion." *Giant Food Stores, LLC v. Dep't of Health,* 808 A.2d 299, 304 (Pa.Cmwlth.2002).

Here, D.Z. does not assert the Hearing Officer's exercise of discretion was the product of fraud or bad faith. Moreover, we disagree with D.Z. that the Hearing Officer abused his power through the procedural arrangement for translation. Regardless of D.Z.'s preferred arrangement for interpretative services, it is clear that, in requiring complete interpretation during the hearings, the Hearing Officer afforded D.Z. a full opportunity to be heard in accordance with applicable statutory provisions governing interpretative services. Stated otherwise, in requiring complete interpretation throughout the proceedings, the Hearing Officer granted D.Z. a full opportunity to be heard.

Moreover, while D.Z. generally asserts the Hearing Officer's decision requiring the full use of the interpreters hindered her ability to effectively present her case or examine witnesses, she does not specifically identify how the Hearing Officer's ruling resulted in prejudice. Because demonstrable prejudice is a "key factor" in determining whether a denial of procedural due process occurred, *Pollock,* and because D.Z. does not clearly explain how she suffered prejudice, no procedural due process violation is apparent.

## II. Appointment of Interpreters

### A. Certified or "Otherwise Qualified" Interpreters

D.Z. next challenges the Hearing Officer's appointment of the two interpreters employed in the multiple proceedings here. Specifically, she asserts the Hearing Officer erred in failing to appoint a certified or otherwise qualified interpreter.

As noted above, the General Assembly provided for the appointment of interpreters in administrative proceedings. *See* 2 Pa.C.S. §§ 561–568. The relevant provisions of that statute state:

**§ 563. Appointment of interpreter**

**(a) Appointment of certified interpreter.**—Upon request or sua sponte, a presiding officer shall appoint a certified interpreter, unless a certified interpreter is unavailable as provided in subsection (b).

**(b) Appointment of otherwise qualified interpreter when certified interpreter is unavailable.**—

(1) An otherwise qualified interpreter shall be appointed by the presiding officer if a good faith effort was made to obtain a certified interpreter and a certified interpreter was not reasonably available, as determined by the presiding officer.

(2) Prior to the appointment of an otherwise qualified interpreter, the presiding officer shall state on the record that the otherwise qualified interpreter:

(i) is readily able to interpret; and

(ii) has read, understands and agrees to abide by the code of professional conduct for administrative proceeding interpreters for persons with limited English proficiency, as established by [the Department of Labor and Industry].

2 Pa.C.S. § 563. Additionally, 2 Pa.C.S. § 101 sets forth the following pertinent definitions of "certified" and "otherwise qualified interpreters":

"Certified interpreter." A person who:

(1) is readily able to interpret; and

(2) either:

(i) is certified by the Department of Labor and Industry in accordance with Subchapter C of Chapter 5 (relating to administrative proceeding interpreters for persons with limited English proficiency); or

(ii) is certified by the Department of Labor and Industry in accordance with Subchapter D of Chapter 5 (relating to administrative proceeding interpreters for persons who are deaf) or is registered with the department pursuant to the act of July 2, 2004 (P.L. 492, No. 57); known as the Sign Language Interpreter and Transliterator State Registration Act.

\* \* \*

"Otherwise qualified interpreter." A person who:

(1) For purposes of Subchapter C of Chapter 5 (relating to administrative proceeding interpreters for persons with limited English proficiency):

(i) is readily able to interpret; and

(ii) has read, understands and agrees to abide by the code of professional conduct for administrative proceeding interpreters for persons with limited English proficiency as established by the Department of Labor and Industry in accordance with Subchapter C of Chapter 5.

2 Pa.C.S. § 101.

D.Z. correctly asserts, and the School District does not dispute, that the record here contains no indication that either interpreter used in the proceedings below was *certified* pursuant to the above-cited statutory provisions.[9] The Hearing Officer made no reference to either of the applicable subsections as authority for, or clarification of, his appointment of the interpreters.

D.Z. argues that, after a brief questioning of Danmeng Lin, the interpreter for the February 24, March 5, and May 19 hearings, the Hearing Officer accepted Lin "as a qualified translator interpreter for the purposes of these proceedings." R.R. at 3a. D.Z. points out that, during the Hearing Officer's questioning, Lin stated she was not licensed. *Id.* D.Z. further notes that at the outset of the March 5 hearings, she asserted that Lin was not licensed. R.R. at 20a. D.Z. points out that the Hearing Officer overruled her objection, restating his position that he found Lin qualified. *Id.*

D.Z. further notes that the interpreter for the April 1 and 2, 2009 proceedings was Ms. Jing Chen. After a brief examination by the Hearing Officer, Chen was accepted "as a qualified interpreter" for the purposes of those proceedings. R.R. at 35a–36a.

Thus, D.Z. is correct that neither interpreter was appointed pursuant to 2 Pa.C.S. § 563(a) as a *certified* interpreter; rather, the interpreters could only be viewed as "otherwise qualified interpreter[s]" under 2 Pa.C.S. § 563(b).

D.Z. argues the Hearing Officer erred in appointing "otherwise qualified interpreters" because he did not state on the record that either interpreter read, understood, and agreed to abide by the code of professional conduct for administrative proceeding interpreters, as mandated by 2 Pa.C.S. § 563(b)(2)(ii). D.Z. asserts the express

9. The School District asks this Court to take judicial notice of the fact that the rosters of certified interpreters, which are maintained by the Administrative Office of Pennsylvania Courts, both at the time of the proceedings at issue here, and at present, list no interpreters as *certified* in Mandarin Chinese.

and unambiguous language of that section requires a hearing officer seeking to appoint an otherwise qualified interpreter "shall" make such statement of record, and the School District does not dispute that no such statement was made on the record as to either interpreter. *See* R.R. at 2a–5a; R.R. at 35a–36a.

The School District responds the Hearing Officer provided appropriately qualified interpreters. It argues the "nature and the spirit of the law" were satisfied by the Hearing Officer's and the parties' examination of the two interpreters. The School District also points out the oath administered off the record to Danmeng Lin by the court reporter encompassed the requirement to make a true and accurate translation of the proceedings and acknowledged the professional requirements of the position. School District's Br. at 22–23; R.R. at 3a. The School District further contends that throughout the entire due process proceedings, including all five hearing sessions, it provided D.Z. "otherwise qualified" interpreters.

The School District further maintains that any alleged limitations or difficulties experienced by the interpreters were inconsequential or harmless and, therefore, do not amount to demonstrable prejudice. The School District argues the record is replete with documentation of D.Z.'s full, complete and active participation. Thus, it contends, D.Z. received all process due.

It is beyond dispute that, when interpreting statutes, this Court will not, and cannot, disregard the express and plain language of a statute under the pretext of pursuing its spirit. Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921; *Pizzutti, Inc. v. Commonwealth,* 976 A.2d 641 (Pa.Cmwlth.2009).

Through Section 563(b)(2)(ii), our General Assembly employed mandatory language requiring that a presiding officer in an administrative proceeding, who appoints an otherwise qualified interpreter, "*shall* state on the record that the otherwise qualified interpreter ... has read, understands and agrees to abide by the code of professional conduct for administrative proceeding interpreters for persons with limited English proficiency, as established by the department." 2 Pa.C.S. § 563(b)(2)(ii) (emphasis added). Further, the very definition of an otherwise qualified interpreter states that such an interpreter read and understood the code of professional conduct referenced in Section 563(b)(2)(ii). 2 Pa.C.S. § 101.

While not dispositive of the issue raised by D.Z., it is helpful to note that, during the Hearing Officer's *voir dire* on qualifications of the interpreters, the Hearing Officer elicited testimony that: (i) both interpreters hold college degrees from American universities; (ii) both interpreters are native Chinese speakers; and, (iii) both interpreters previously provided professional translation services, including interpreting in legal proceedings. R.R. at 3a, 35a.

■ Further, although 2 Pa.C.S. § 563(b)(2)(ii) requires a presiding officer state on the record that an "otherwise qualified interpreter" has read, understands and agrees to abide by the code of professional conduct, that provision does not excuse a party from raising an objection where the presiding officer does not make this statement on the record. *Cf. United States v. Huang,* 960 F.2d 1128, 1135 (2d Cir.1992) ("though the [federal Court Interpreters Act, 28 U.S.C. §§ 1827, 1828,] speaks in mandatory terms as to the duty of the court to establish an interpreter program to protect the rights of a defendant whose only or primary language is other than English, *it does not preclude a defendant from ... waiving any objection*

*he may have to the certification* or performance *of a translator* for a witness.") While it is clear that we must apply the plain language of pertinent statutes, our review of the record here discloses no indication that D.Z. raised the issue regarding the code of conduct at any time before the Hearing Officer.

Indeed, in her brief to this Court, D.Z. does not explain where she raised this issue below. D.Z.'s failure to timely raise this issue is problematic in that it deprived the Hearing Officer any opportunity to cure the alleged problem. Further, D.Z.'s failure to raise this issue is not a mere technicality; rather, a timely objection would have provided the parties a fair opportunity to address the issue. Instead, the issue is raised here after the completion of protracted proceedings, when the ability to cure is gone. For these reasons, D.Z. waived the issue regarding the code of conduct. *See* 2 Pa.C.S. § 703(a) ("[a] party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, *but such party may not raise upon appeal any other question not raised before the agency ....*") (emphasis added); Pa. R.A.P. 1551(a) ("[n]o question shall be heard or considered by the court which was not raised before the governmental unit."); *Bedford Downs Mgmt. Corp. v. State Harness Racing Comm'n*, 592 Pa. 475, 926 A.2d 908 (2007) (party's claim that agency's statement of policy and its application of that policy resulted in a denial of due process was waived where party did not formally object before the agency); *Lehman v. Pa. State Police*, 576 Pa. 365, 839 A.2d 265 (2003) (while facial challenges to a statute's constitutionality need not be raised before an administrative tribunal to be preserved on appeal, challenges to the application of a statute must be raised before the agency or are waived on appeal).

## B. Replacement of Interpreters

■ Citing 2 Pa.C.S. § 564, D.Z. also contends the Hearing Officer erred in failing to replace the two interpreters, who were inaccurate, unresponsive and could not communicate D.Z.'s speech effectively. D.Z. points to several instances that purportedly show the interpreters' inaccuracy or unresponsiveness. She asserts that, rather than responding to these problems by replacing the interpreters, the Hearing Officer improperly reprimanded D.Z. when she attempted to correct the problems. D.Z. argues that the Hearing Officer ignored the fact that the interpreters were not communicating effectively, and his failure to dismiss the interpreters and secure qualified replacements constituted error.

In her reply brief, D.Z. maintains that the deficiencies she identifies were not inconsequential or harmless. In particular, she contends the interpreters consistently failed to wait for her to finish her questions before interpreting, incorrectly translated her questions as statements, did not understand everything that was stated in English, and required prompting in order to begin translating. As a result, D.Z. argues she was unable to communicate her questions to witnesses and missed portions of the testimony. Thus, she maintains, her due process right to meaningfully participate in the hearing was compromised in the very manner that the statutory provisions governing interpreters were designed to protect.

■ As noted above, demonstrable prejudice is a key factor in assessing whether procedural due process was denied. *Pollock.* Also, an order of an administrative agency will not be disturbed

for harmless error. *Capital BlueCross.* To constitute reversible error, an administrative evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Id.*

Section 564, entitled **"Replacement of interpreter,"** states, in its entirety:

A presiding officer shall dismiss the interpreter and obtain the services of another interpreter in accordance with this subchapter if the interpreter:

(1) Fails to follow the standards prescribed by law or by the code of professional conduct for administrative proceeding interpreters for persons with limited English proficiency.

(2) Is unable to effectively communicate with the presiding officer or the person with limited English proficiency, including where the interpreter self-reports such inability.

2 Pa.C.S. § 564.

As to subsection (1), as explained above, D.Z. waived any issue relating to the code of conduct by failing to raise it before the Hearing Officer.

 Further, while D.Z. points to several places in the record in an effort to show the interpreters here were ineffective, she offers no clear explanation as to what evidence was precluded or improperly developed because of the alleged ineffective communications. More importantly, she offers no explanation as to how such evidence would likely lead to a different result. Absent a clear explanation of harm resulting from the translation problems, we decline to disturb the Hearing Officer's decision on this basis. *Capital BlueCross; Lock v. City of Phila.,* 895 A.2d 660 (Pa. Cmwlth.2006); *Peden v. Gambone Bros. Dev. Co.,* 798 A.2d 305 (Pa.Cmwlth.2002).

### III. Failure to Address Issues/Exclusion of Evidence

D.Z. next contends the Hearing Officer denied her due process by failing to address all the issues she presented, and by excluding certain relevant evidence and testimony in connection with those issues, thus abridging her fundamental right to be heard. Within this general issue, D.Z. asserts related arguments directed towards both the School District's complaint and her complaint. We address the two complaints, and D.Z.'s related arguments, separately.

### A. PTRE Proceedings

 By way of background, in the history that preceded the parties' actions, the School District sought permission to reevaluate Student concerning his special education, and, through subsequent amendment, his gifted education as well. After initially agreeing to the School District's request, D.Z. requested the School District employ certain accommodations that she felt necessary to compensate for Student's disability, disagreed with the scope of the testing the School District sought, and eventually revoked her permission to reevaluate.

In the wake of the School District's initiation of the process to obtain D.Z.'s consent to reevaluate Student, D.Z. sent an e-mail, requesting that the School District perform an IEE. Original Record (O.R.), Dkt. No. 1264 C.D.2009, Item # 4, School District's Ex. 18 at 1. When the School District rejected D.Z.'s IEE request, and the parties could not agree on the issues, the School District filed its complaint requesting a hearing officer determine that the School District could proceed with testing pursuant to the PTRE. R.R. at 201 a–202a. D.Z. subsequently filed her complaint, challenging the School District's

IEP and GIEP for Student.[10] R.R. at 218a–219a.

With regard to the proceedings on the School District's complaint, D.Z. argues the Hearing Officer expressly limited the scope of those proceedings to a consideration of only the School District's request for PTRE, and he refused to allow D.Z. to present evidence relevant to her request for an IEE. That refusal, she contends, included the preclusion of witnesses and testimony regarding: the School District's prior accommodations in their evaluative efforts; the School District's previous evaluative methods and results in assessing and determining Student's present level of educational performance; and, the results of other independent testing initiated by D.Z.

D.Z. directs our attention to numerous places in the record where the Hearing Officer refused to allow certain testimony and witnesses. She also cites the Hearing Officer's refusal to address her IEE request as well as her attempts to establish a foundation for the necessity of that request. *See* R.R. at 36a, 63a–64a, 67a–68a, 74a–76a; O.R., Dkt. No. 1263 C.D.2009 (O.R.1263), Notes of Testimony (N.T.)[11], 4/1/09, at 405–413.

The School District counters that the Hearing Officer restricted the scope of the proceedings out of concern for the time sensitive nature of resolving the PTRE. *See, e.g.,* R.R. at 36a. The School District further argues the Hearing Officer properly limited the scope of the proceedings on its complaint to the issue of the PTRE,

and the evidence to which D.Z. refers was irrelevant to that narrow inquiry.

Further, the School District asserts D.Z. only has a right to request an IEE *after* the School District completes its reevaluation. The School District contends that it requested the PTRE in response to D.Z.'s concerns about its estimation of Student's educational performance, and his level of performance. Also, it argues that the goal of the reevaluation was to determine Student's present educational level. The School District asserts D.Z.'s disagreement with its intended reevaluative methods and her accompanying refusal to consent to the PTRE, are not the proper subjects of D.Z.'s IEE request, and, therefore, the Hearing Officer properly excluded evidence related to these issues from the hearings on the School District's complaint.

While D.Z. maintains that she filed her IEE request because of her disagreement with the School District's "prior assessments and evaluation" of Student, *see* D.Z.'s Reply Br. at 6, and, therefore, not in response to the School District's PTRE request, our review of the record belies this assertion. In addition, as explained more fully below, the timing of D.Z.'s IEE request is improper as a matter of law.

Factually, D.Z. requested an IEE from the School District by e-mail dated December 9, 2008. O.R. 1264 at Item # 4, School District's Ex. 18 at 1. Our review of the various requests, responses and correspondence between the parties places D.Z.'s

---

10. D.Z.'s various pleadings can best be characterized as informal, as they are largely comprised of generally worded e-mails. *See, e.g.,* R.R. at 218a–219a.

11. The notes of testimony of all of the multiple proceedings before the Hearing Officer, with the sole exception of the notes of testimony of the May 19, 2009, hearing, are pa-

genumbered sequentially as if multiple parts of one transcript; these sequentially numbered transcripts are hereinafter referred to as "N.T. at ____." The notes of testimony of the May 19 hearing are not sequentially numbered in relation to the prior transcripts, and shall be referred to hereinafter as "N.T. 5/19/09 at ____."

IEE request squarely within the context of the School District's PTRE request, and well after the School District commenced that evaluative process. *See* O.R. 1264 at Item #4. D.Z.'s IEE request makes no reference to any challenge to any prior School District evaluations, despite her attempts to now characterize it in that manner. O.R. 1264 at Item #4, School District's Ex. 18 at 1–2. Further, D.Z.'s due process complaint makes no reference to her IEE request as an issue related to any prior School District evaluations; in fact, her complaint makes no reference to her IEE request at all. R.R. at 218a–219a. Considered in the context of the entire record, D.Z.'s IEE request can only be viewed as a response to the School District's PTRE request, and not as a separate challenge to any prior School District evaluation.

Legally, a request for an IEE made before the completion of an educational agency's requested evaluation, is not provided for under applicable federal statutory law and attendant regulations.

To that end, Section 1415(b)(1) of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(b)(1), clearly provides for parental involvement in the evaluative process, and expressly provides for a parental request of an IEE. Noting that D.Z.'s IEE request expressly sought an IEE at public expense, an examination of the regulations promulgated under IDEA clarifies the appropriate timing of such a request:

§ 300.502 **Independent educational evaluation.**

(a) General.

(1) The parents of a child with a disability have the right under this part to obtain an independent educational evaluation of the child, *subject to*

*paragraphs (b)* through (e) *of this section.*

\* \* \*

(b) *Parent right to evaluation at public expense.*

(1) *A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency,* subject to the conditions in paragraphs (b)(2) through (4) of this section.

(2) If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either—

(i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or

(ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing pursuant to §§ 300.507 through 300.513 that the evaluation obtained by the parent did not meet agency criteria.

34 C.F.R. § 300.502 (emphasis added). Subsection (a) of the regulation subjects a parent's right to obtain an IEE to, among other things, Subsection (b). In turn, subsection (b) limits that right to instances where "the parent disagrees with an evaluation obtained by the public agency[.]" *Id.*

Thus, by the regulation's express language, an evaluation must first be obtained by the public agency—in this matter, the School District—before D.Z. is vested with any right to disagree with that evaluation, or to request an IEE in connection with that disagreement. *See, e.g., P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.,* 585 F.3d 727, 740 (3d Cir.2009) ("A parent has the right to an IEE at public expense *if the parent disagrees with the evaluation obtained by the school.*") (Em-

phasis added); *G.J. ex rel. E.J. v. Muscogee Cnty. Sch. Dist.,* 704 F.Supp.2d 1299 (M.D.Ga.2010) (where school district did not obtain reevaluation of student because of parent's refusal to consent, parent had no right to publicly funded IEE); *Sch. Bd. of Manatee Cnty., Florida v. L.H.,* 666 F.Supp.2d 1285 (M.D.Fla.2009) ("Parents of a child with a disability have the right to an IEE at public expense *if the parent disagrees with an evaluation obtained by the public agency* subject to the conditions set forth in the regulations.") (Emphasis added).

In short, we agree with the Hearing Officer's implicit rejection of D.Z.'s characterization of her IEE request as a response to some prior School District evaluation, and not as a response to the District's PTRE request prior to the actual completion of that evaluation.

The statutory scheme makes clear that it is only after the School District is granted permission to reevaluate and then completes that reevaluation that D.Z.'s parental right to request an IEE—and the School District's concomitant right to request another due process hearing to defend its completed reevaluation—vests. The School District does not dispute D.Z.'s right to seek a due process proceeding on the School District's evaluation *after* that evaluation is performed, should D.Z. then disagree with the evaluation itself. Thus, D.Z.'s IEE request, and her attempt to inject that request into this proceeding, was premature.

In short, we discern no evidence relevant to the District's PTRE request that the Hearing Officer excluded here. Indeed, D.Z. does not argue that any excluded PTRE-relevant evidence exists. As a result, we conclude the Hearing Officer did not err in limiting the witnesses, testimony, evidence and arguments to the narrow

issue of the School District's PTRE request.

Further, *Duquesne Light Co. v. Workmen's Compensation Appeal Board (Kraft),* 53 Pa.Cmwlth. 92, 416 A.2d 651 (1980) and *Franklin Plastics Corp. v. Department of Environmental Resources,* 657 A.2d 100 (Pa.Cmwlth.1995), cited by D.Z. for the proposition that this Court reversed and remanded in cases where an administrative agency's exclusion of evidence denied a party the right to a full and fair hearing, are factually distinguishable and, therefore, do not compel a different here.

First, in *Duquesne Light,* this Court remanded a case where a workmen's compensation referee barred an employer from conducting reasonable cross-examination of witnesses on the issue of whether a claimant provided the employer timely notice of an alleged work-related condition, an issue which was critical to the employer's defense.

Next, in *Franklin Plastics,* we remanded a case to the Environmental Hearing Board where it improperly barred an entity, which the Department of Environmental Resources (DER) charged with various emissions violations, from eliciting, on cross-examination, crucial exculpatory evidence, which restricted its ability to challenge the testimony and evidence DER presented.

Here, unlike in *Duquesne Light* and *Franklin Plastics,* the Hearing Officer did not improperly limit cross-examination on a critical issue. To the contrary, testimony concerning D.Z.'s IEE request was irrelevant to the proceedings on the School District's PTRE request. As explained above, D.Z. could not obtain a publicly funded IEE where the School District had not yet obtained authorization to reevaluate Student. Thus, unlike in *Duquesne*

*Light* and *Franklin Plastics,* we discern no reversible error.

### B. Appropriateness/Implementation of IEP/GIEP

D.Z. next asserts the Hearing Officer erred in refusing to consider the issues properly raised in her complaint during the proceedings here. Specifically, she argues her complaint challenged both the appropriateness and the implementation of Student's IEP and GIEP, and she requested those related issues be heard together based on her assertions that Student's disability was masking his gifted abilities. *See* O.R. 1264 at Item # 5, Hearing Officer Ex. 2.

The School District responds that the appropriateness of Student's IEP and GIEP was barred from consideration under the doctrine of *res judicata* because Student's IEP and GIEP were both found to be appropriate by prior hearing officers after hearings. Thus, the School District contends these issues were not properly before this Hearing Officer for consideration, and, therefore, D.Z.'s assertions should be rejected.

By way of background, five days before the May 19, 2009, hearing on D.Z.'s complaint, the Hearing Officer informed the parties of his ruling on the issues, witnesses and evidence he would permit to be addressed. R.R. at 215a–216a. The Hearing Officer categorized the issues he perceived as presented in D.Z.'s complaint as follows: (1) appropriate design and implementation of Student's IEP and GIEP for December 2006 to the end of the 2006–2007 (5th grade) school year, for the 2007–2008 (6th grade) school year, and for the then-current 2008–2009 (7th grade) school year; (2) appropriate implementation of disability accommodations over that same time; (3) a request for more frequent audiological assessments; and, (4) an autism

specialist's participation in Student's IEP team. *Id.*

Responding to these issues, the Hearing Officer limited the pending hearing to the implementation aspect only on the first issue, noting that the issues concerning the appropriate design of Student's IEP and GIEP for December 2006 to the end of 5th grade, and for 6th grade, were previously decided, and the same education plans remained in effect for 7th grade. The Hearing Officer also limited the hearings to only the implementation aspect of issue 2. He further excluded all aspects of issues 3 and 4 on the ground that they were related to the appropriateness of the education plans, which was decided in the prior due process adjudications. *Id.*

The Hearing Officer also listed the witnesses from whom he would receive testimony based on his limitation of issues, excluded the entire testimony of one witness on relevancy grounds, and excluded transcripts and exhibit books from prior hearings. *Id.* Additionally, the Hearing Officer expressly allowed for the admission of the prior hearing officers' decisions as exhibits. *Id.* We discern no error in the Hearing Officer's rulings.

Two different concepts are at issue. First, a question is raised about the design or contents of Student's education plans. This is at times referred to as the appropriateness of the plans. Second, once plans are agreed upon or approved, a question is raised about whether the plans were followed or implemented properly.

As concerns the implementation of Student's education plans, we completely reject D.Z.'s complaint that the Hearing Officer precluded her from offering proof on this issue. To the contrary, the Hearing Officer did not exclude evidence on implementation for any school year. R.R. at 94a, 215a. Indeed, at the hearing on D.Z.'s complaint, the Hearing Officer ex-

pressly permitted D.Z. an opportunity to offer evidence regarding the implementation of Student's IEP and GIEP; however, D.Z. declined to participate in the hearing. R.R. at 94a–95a. In fact, D.Z. would not allow the Hearing Officer to question witnesses regarding the implementation of Student's education plans. R.R. at 94a. D.Z.'s challenge on this issue is baseless.

 Regarding the design of Student's plans, we note that *res judicata* bars re-litigation of a claim when the cause of action in one proceeding is identical to that involved in a prior final judgment. *Stilp v. Commonwealth*, 910 A.2d 775 (Pa. Cmwlth.2006). The doctrine applies to administrative agency determinations. *Hall v. Pa. Bd. of Prob. & Parole*, 733 A.2d 19 (1999). A party seeking to bar re-litigation of a claim must show the existence of four conditions: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and, (4) identity of the quality or capacity of the parties suing or sued. *Stilp.*

Here, after a prior due process proceeding, a hearing officer found Student's May 31, 2007 IEP was appropriate and ordered its implementation (2007 IEP Decision). R.R. at 150a–155a. Additionally, after a different due process proceeding, a hearing officer found Student's GIEP for the 2007–2008 (6th grade) school year was appropriate (2008 GIEP Decision). R.R. at 157a–173a. Thus, it is clear that the issue of design of Student's education plans for the period from December 2006, through the completion of 6th grade, was litigated in the proceedings that culminated in the 2007 IEP and 2008 GIEP decisions. Review of those prior decisions reveals all four *res judicata* factors set forth above are satisfied as to the academic periods addressed in those two prior proceedings. R.R. at 150a–155a; 157a–173a. As such,

we discern no error in the Hearing Officer's exclusion of issues concerning the design of the IEP and GIEP for the school years through 6th grade. *Montour Sch. Dist.*

For several reasons, we also reject D.Z.'s assertion that the Hearing Officer erred in excluding issues relating to the design of Student's education plans for the 2008–2009 (7th grade) school year. First, as described in more detail below, the previously approved education plans remained in effect for that school year.

Since 2007, D.Z. has not approved any educational programming offered by the School District related to Student's IEP. In particular, the record reveals that the IEP team convened on March 10, May 16, and October 22, 2008. N.T. at 138–140. After each of those meetings, the School District issued D.Z. a "Notice of Recommended Educational Placement"; each time D.Z. responded with less than her full approval. *Id.;* School District Ex. 9 at 1, 28–29; School District Ex. 13 at 29. After D.Z.'s October 22, 2008 rejection, the parties proceeded to mediation, which also proved unsuccessful. N.T. at 141. Based on the parties' failure to reach an agreement, the previously approved IEP remained in place and was implemented. *See* Section 1415(j) of the IDEA ("during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child....").

Similarly, D.Z. refused to consent to a GIEP developed and offered by the School District. *See* School District Ex. 12. After a due process proceeding, a hearing officer determined the School District's GIEP was appropriate. Pursuant to state regulations, this GIEP remained in effect, absent an agreement by the parties, which

did not occur here. *See* 22 Pa.Code § 16.63(a).

Thus, the IEP and GIEP, which prior hearing officers determined were appropriate, remained unchanged and in full effect for 7th grade. D.Z.'s continual rejection of the subsequent programming offered by the School District resulted in the continuation of the previously adjudicated education plans. Because the educational programming provided by the School District that was previously adjudicated as appropriate remained in effect for the 2008–2009 school year, no error is apparent in the Hearing Officer's exclusion of evidence relating to the design of the previously adjudicated education plans.

Second, and more importantly, our review of the record reveals that D.Z. did not properly preserve any issue regarding the Hearing Officer's alleged improper exclusion of evidence.

While administrative agencies are not bound by technical rules of evidence, where a tribunal excludes evidence, error may not be predicated on the ruling unless the substance of the evidence was made known to the tribunal by offer or by motion *in limine* or was apparent from the context within which the evidence was offered. Pa. R.E. 103(a)(2); *see, e.g., Romeo v. Manuel,* 703 A.2d 530 (Pa.Super.1997).

Of further note, the General Rules of Practice and Procedure, state, in relevant part (with emphasis added):

> **§ 35.190. Appeals to agency head from rulings of presiding officers.**
>
> \* \* \*
>
> (b) *Offers of proof. An offer of proof made in connection with an objection taken to a ruling of the presiding officer rejecting or excluding proffered oral testimony shall consist of a statement of the substance of the evidence which counsel contends would be adduced by*

*testimony* ; and if the excluded evidence consists of evidence in documentary or written form or of reference to documents or records, a copy of the evidence shall be marked for identification and shall constitute the offer of proof.

1 Pa.Code § 35.190(b).

■ An offer of proof is designed to alert a tribunal to the content and purpose of the testimony. *Romeo.* It also gives a reviewing court the means to determine whether a refusal to admit the evidence was erroneous, and if it was harmful. *Id.*

■ Failure to make an offer is treated as a waiver of that ground for relief, unless the substance of the evidence was apparent from the context, or had been brought to the tribunal's attention in a motion *in limine. Id.*

■ Despite D.Z.'s general assertions, it is unclear what evidence she planned to offer that might have shown that the design of Student's education plans for 7th grade was inappropriate. D.Z. does not describe any specific design evidence in her brief to this Court. In addition, our review of the transcript reveals D.Z. made no offer of proof as to any evidence she wished to present. *See* R.R. at 91a–96a. In the absence of an offer of proof and any description of the alleged improperly excluded evidence before this Court, D.Z. did not preserve this issue. *Romeo.*

In short, D.Z. bore the burden of proof on her due process complaint. *See, e.g., L.E. v. Ramsey Bd. of Educ.,* 435 F.3d 384 (3d Cir.2006) (quoting *Schaffer v. Weast,* 546 U.S. 49, 62, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005)) ("the burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief.") However, D.Z. offered no proof in support of her allegations. In addition, D.Z. actively thwarted further development of the record by refusing to partici-

pate in the proceeding on her complaint and by not permitting the Hearing Officer to elicit testimony on the issues raised in her complaint. Without a clear explanation of what testimony D.Z. wished to elicit or what evidence she sought to present, and how that evidence may have changed the result, it is impossible to discern any prejudice resulting from the Hearing Officer's evidentiary rulings. Thus, we reject D.Z.'s bald allegations of error.

Third, our decisions in *Manor v. Department of Public Welfare,* 796 A.2d 1020 (Pa.Cmwlth.2002) and *Brandt v. Department of Public Welfare,* 58 Pa.Cmwlth. 266, 427 A.2d 758 (1981), which D.Z. relies on for the proposition that, in conducting an evidentiary hearing, an agency should determine all issues that are adequately raised and properly before it, do not compel a different result here.

In *Brandt,* we remanded a case to the Department of Public Welfare (DPW) where a hearing examiner did not elicit testimony or address the sole issue raised by way of a party's request for modification or abatement of costs incurred in the treatment of the party's disabled son.

Unlike the hearing examiner in *Brandt,* who we faulted for not ensuring that all relevant issues were fully examined and that all parties had an opportunity to fully present their case, the Hearing Officer here expressly invited D.Z. to examine witnesses, but D.Z. declined to do so. Further, the Hearing Officer repeatedly warned D.Z. that her refusal to proceed with her case by examining witnesses would result in dismissal of her complaint. Nevertheless, D.Z. refused to participate. Also, in stark contrast to the facts presented in *Brandt,* the Hearing Officer here attempted to question witnesses himself in order to elicit relevant testimony, but D.Z. would not allow him to do so. R.R. at 94a–

95a. Thus, *Brandt* is clearly distinguishable.

Similarly, this is not a case like *Manor.* There, a nursing facility appealed the initial denial of its request to add several medical assistance beds to its existing, certified facility. The initial denial was based on a statement of policy that indicated DPW would terminate the enrollment of facilities that expanded their existing medical assistance bed capacity. On the nursing facility's appeal, a hearing officer refused to consider the facility's challenges to the statement of policy and precluded the facility from presenting evidence in support of the issues it raised. The hearing officer also reviewed the initial denial of the facility's request for an abuse of discretion rather than *de novo,* as required by DPW regulations. This Court determined the hearing officer erred in failing to hear the matter *de novo* and in failing to decide issues raised by the facility that were "fundamental to the entire proceeding." *Id.* at 1030.

Here, unlike in *Manor,* the Hearing Officer did not bar D.Z. from presenting evidence; rather, D.Z. chose not to participate. Additionally, unlike the hearing officer in *Manor,* here the Hearing Officer did not refuse to consider the issues properly before him; rather, D.Z.'s unwillingness to participate in the proceedings foreclosed the development of a record on these issues. Additionally, through his evidentiary ruling issued prior to the hearing, the Hearing Officer did not refuse to consider relevant issues. Rather, he limited the issues to those not previously decided in prior adjudications, and he limited D.Z.'s proffered list of 23 witnesses to those who could present relevant testimony on the issues properly before him. Thus, D.Z.'s reliance on *Manor* is misplaced.

## IV. Denial of Continuance

D.Z. further maintains, even if the Hearing Officer did not err in limiting the scope of the proceedings on her complaint, the Hearing Officer's subsequent denial of her request for a continuance in order to prepare her case constituted an abrogation of her due process rights.

More specifically, D.Z. argues the Hearing Officer issued his decision to restrict the scope of the hearing on her complaint via an e-mail ruling on the evening of May 14, and the hearing was scheduled to begin at 9:00 a.m. on May 19. She argues the Hearing Officer gave her less than five days notice that he eliminated the majority of her issues from consideration. D.Z. asserts she responded to the ruling by requesting a continuance and, after she reiterated that request the day before the hearing, the Hearing Officer summarily refused her request. D.Z. argues that she unsuccessfully renewed her request several times at the outset of the May 19 hearing. D.Z. asserts the Hearing Officer's denial of a continuance here, in light of his decision to significantly restrict the issues to be heard and the evidence to be considered, violated her right to both notice and hearing.

Section 35.187 of the General Rules of Practice and Procedure, states, as pertinent:

Presiding officers designated by the agency head to preside at hearings shall have the authority, within the powers and subject to the regulations of the agency, as follows:

(1) To regulate the course of hearings, including the scheduling thereof, subject to the approval of the agency head, and the recessing, reconvening, and the adjournment thereof, unless otherwise provided by the agency

head, as provided in § 35.102(b) (relating to hearing calendar).

1 Pa.Code § 35.187(1).

The regulations also provide that:

(b) Except as otherwise provided by law, requests for continuance of hearings ... shall be by motion in writing, timely filed with the agency, stating the facts on which the application rests, except that during the course of a hearing in a proceeding, the requests may be made by oral motion in the hearing before the agency head or the presiding officer.

1 Pa.Code § 31.15(b).

■■■ The decision to grant or deny a request for a continuance is within the sole discretion of the hearing examiner. *Capital BlueCross; Lee v. Dep't of Pub. Welfare*, 105 Pa.Cmwlth. 211, 523 A.2d 1188 (1987). As a result, our review is limited to determining whether the hearing examiner abused his discretion. *Id.*

■■■ We discern no abuse of discretion in the Hearing Officer's denial of D.Z.'s continuance request. Five days before the scheduled hearing, the Hearing Officer issued a ruling in which he limited the scope of the hearing to the implementation of Student's education plans. R.R. at 215–216. In addition, he eliminated 11 of the 23 individuals D.Z. identified as witnesses she intended to present on the ground they lacked relevant information. *Id.* Further, based on his determination to deconsolidate the proceedings on the School District's PTRE with D.Z.'s IEP and GIEP challenges, the Hearing Officer declined to allow the parties to "re-use" exhibits from the prior proceedings in the proceedings on D.Z.'s complaint. *Id.*

Although D.Z. asserts she twice requested a continuance in the days preceding the May 19 hearing, our review of the record discloses no written requests. Rather, at

hearing, after the Hearing Officer placed on the record his prior ruling as to the scope of the hearing, D.Z. stated:

This hearing, I do not have enough time to prepare myself and prepare for cross-examining this [sic] witnesses. I don't have enough time to prepare and to cross-examining [sic] this witness—all the witnesses. That's one.

Second, this hearing is not the same issue that I wanted to have the due process issue.

Third, before this hearing[,] school did not allow me to review [Student's] school record. I have not received—I did not get—I have not get [sic] three of [Student's] above level math tests result. I have not get [sic] three of [Student's] writing test results. Also, I have not get [sic] [Student's] reading test results—above level reading result.

R.R. at 91 a–92a.

In response, the Hearing Officer stated:

The first issue, on preparation, as I indicated, the parties and I have exchanged dozens, in excess of fifty e-mails, regarding this hearing. I advised [D.Z.] of the witnesses that I expected to testify.

And I would further add that each of these teachers has worked with [Student], and [D.Z.] may well have had interactions with these teachers about [Student's] education. And so I find objections to her ability to prepare for this hearing to be unfounded.

\* \* \*

The second issue which [D.Z.] presents regarding the basis of this hearing, I have studied [D.Z.'s] complaint at length. ... And the issues as I have detailed them are the result of the study of that complaint. Any other issue is not a matter for this hearing.

\* \* \*

Third, as a result of an extensive three-hour pre-hearing conference [in the prior proceeding,] the [S]chool [D]istrict was instructed to provide relevant documents to [D.Z.]. I will now ask [counsel for the School District] to represent, on behalf of the school district, that those documents have been shared....

R.R. at 92a. Counsel for the School District confirmed the School District twice provided Student's records to D.Z. *Id.* For these reasons, the Hearing Officer declined to continue the hearing and indicated his willingness to proceed with the questioning of the witnesses present at the hearing.

Based on the facts presented, we discern no due process violation from the Hearing Officer's denial of D.Z.'s continuance request. D.Z. received ample notice of the proceedings and a full opportunity to participate. Contrary to her assertions, the Hearing Officer did not deny D.Z. her right to fully participate in the proceedings; rather, she declined an opportunity to do so. Further, D.Z. had ample time to prepare for the proceedings. She filed her complaint in December 2008, and the proceeding at issue began on May 19, 2009. Given that D.Z. had ample opportunity to prepare for the proceeding, no abuse of discretion or due process deprivation is apparent in the Hearing Officer's denial of the continuance request. *Cf. Steadwell v. Unemployment Comp. Bd. of Review,* 76 Pa.Cmwlth. 439, 463 A.2d 1298 (1983) (due process standards do not guarantee a party a right to a continuance, even for good reason, if he fails to request it in a timely fashion or in a manner consistent with reasonable procedural rules).

Further, this is not a case like *Fiore v. Board of Finance and Revenue,* 534 Pa. 511, 633 A.2d 1111 (1993), relied upon by

D.Z. There, our Supreme Court determined that a taxpayer was denied procedural due process in its tax assessment challenges where, after protracted proceedings, the Commonwealth was permitted to change the basis for the assessments at the last-minute, and the taxpayer was not afforded a sufficient opportunity to prepare a defense.

Here, unlike in *Fiore*, we are not confronted with a situation in which a party sought to change its legal theory at the eleventh hour and the other party was not given adequate opportunity to prepare a response. The Hearing Officer's decision here to limit the scope of the proceedings by paring down the list of 23 witnesses (mostly School District employees) and limiting the presentation of evidence to issues not previously decided, does not amount to a violation of procedural due process. Moreover, although the Hearing Officer's ruling regarding the scope of the hearing was issued five days before the hearing, D.Z. filed her complaint more than five months prior to the hearing; therefore, she was afforded adequate opportunity to prepare her case.

In addition, *Thomas v. Unemployment Compensation Board of Review*, 117 Pa. Cmwlth. 216, 543 A.2d 600 (1988), also cited by D.Z., does not support her position. There, we held an unemployment compensation referee abused his discretion in denying a continuance to a claimant who could not attend a hearing because he was incarcerated. We determined that, in denying the continuance, the referee infringed on the claimant's constitutional right to attend the hearing.

Similarly, in *Shegan v. Unemployment Compensation Board of Review*, 129 Pa. Cmwlth. 62, 564 A.2d 1022 (1989), also cited by D.Z., we determined an unemployment compensation referee abused his discretion in denying a continuance to a claimant who requested the continuance prior to the scheduled hearing so that she could conduct an out-of-state job search. The referee's denial resulted in the claimant's inability to attend the hearing and present testimony.

Here, unlike in *Thomas* and *Shegan*, the Hearing Officer's decision not to continue the proceedings here did not result in D.Z.'s inability to attend the hearing or to present evidence and testimony. To the contrary, D.Z. appeared at the hearing, but elected not to participate. Thus, the Hearing Officer did not preclude D.Z.'s right to be heard; rather, D.Z. simply chose not to do so. Thus, *Thomas* and *Shegan* are inapposite here.

## V. Use of Time Restrictions

As a final issue,[12] D.Z. maintains the Hearing Officer denied her due process by imposing unreasonable time constraints during the proceedings, which hindered her in presenting her case and opposing the School District's case. D.Z. asserts, from the beginning, the Hearing Officer's focus was on expediency. She notes the Hearing Officer initially allotted two hearing sessions for the School District's case and only one session for her case. D.Z. contends she objected, asserting that allowing the School District extra time was unfair especially in light of the

---

**12.** Although D.Z.'s brief lists a sixth question presented, "Whether a combination of errors that occurred during the Special Education Due Process Hearing resulted in a denial of due process[,]" she did not brief this issue. To the extent that D.Z. intended to raise this as an issue separate from those discussed above, we conclude she waived the issue by failing to develop it or cite authority for it. *E.g., Am. Rock Mechs., Inc. v. Workers' Comp. Appeal Bd. (Bik & Lehigh Concrete Techs.),* 881 A.2d 54 (Pa.Cmwlth.2005) (holding issue waived where appellant failed to develop it or cite authority for it).

fact that the translation process slowed her presentation relative to that of the School District. D.Z. argues the Hearing Officer rejected this concern. She then excerpts several specific instances in which the Hearing Officer repeatedly warned her of time constraints during her examination of witnesses in the proceedings on the School District's PTRE. D.Z. contends the time restrictions were inappropriate, particularly in light of the Hearing Officer's order prohibiting her from speaking English during the hearing and his failure to appoint certified interpreters and replace ineffective interpreters. In short, D.Z. maintains the Hearing Officer improperly placed efficiency over her right to a full and fair hearing.

In *Railroad Commission of California v. Pacific Gas & Electric Co.*, 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319 (1938), the United States Supreme Court explained:

> The right to a fair and open hearing is one of the rudiments of fair play assured to every litigant by the Federal Constitution as a minimal requirement. There must be due notice and an opportunity to be heard, the procedure must be consistent with the essentials of a fair trial, and the [agency] must act upon evidence and not arbitrarily.

*Id.* at 393 (citations omitted). Further, "[t]here can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored." *Ohio Bell Tel. Co. v. Pub. Util. Comm'n of Ohio*, 301 U.S. 292, 305, 57 S.Ct. 724, 81 L.Ed. 1093 (1937).

■ Nevertheless, as noted, a hearing officer is vested with authority to regulate the course of administrative hearings, "including the scheduling thereof . . . and the recessing, reconvening, and the adjournment thereof. . . ." 1 Pa.Code § 35.187(1).

■ Here, all of the specific instances cited by D.Z. in support of her contention that the Hearing Officer restricted her ability to examine witnesses occurred during the last two hearings on the School District's PTRE, on April 1 and April 2, 2008. At the outset of the April 1 hearing, the Hearing Officer explained (with emphasis added):

> Because it is critical that [Student] be evaluated, if he will be evaluated at all, it is important that I complete testimony on the PTRE today. I have informed both parties that I intend to hold a complete session to hear from all six witnesses, which will allow me to make a decision on the PTRE. *For that reason I may well move some testimony along and put some degree of time limits on questions or testimony.*

R.R. at 36a. The Hearing Officer allotted approximately one hour for the testimony of each of these witnesses. *See, e.g.*, R.R. at 40a ("As you continue your questioning, [D.Z.], I will indicate that the witness has been testifying for approximately 40 minutes, and I would like to conclude her testimony within an hour; and so approximately 20 minutes remain for questioning . . . ."); 50a–51a ("[This] witness has testified for approximately 45 minutes; and I would ask you to conclude your questioning within another 15 to 20 minutes.")

No abuse of discretion is apparent in the Hearing Officer's exercise of discretion in regulating the course of the proceedings. First and foremost, although D.Z. takes issue with the Hearing Officer's repeated reminders regarding the time allotted for examining witnesses, she offers no explanation of what testimony she was prevented from eliciting or how that testimony would have influenced the outcome of the proceedings. In the absence of such explanation, no reversible error is discernible. *Capital BlueCross.*

Moreover, our review of the record reveals that, although on several occasions the Hearing Officer reminded D.Z. of the time allotted for each witness, the witnesses testified at length and were subject to cross-examination. Further, in several instances in which the Hearing Officer determined no further examination of a particular witness was needed, he expressly indicated that certain points were sufficiently covered in the testimony already offered. *E.g.*, R.R. at 55a, 58a, 66a. Also, in more than one instance, the Hearing Officer assisted D.Z. by seeking clarification on certain points raised by her examination of the witnesses and asking his own questions. R.R. at 55a, 64a, 66a.

In sum, the record makes clear that D.Z. was afforded an opportunity to participate in a full, open and fair hearing. The Hearing Officer used reasonable time limitations to control protracted proceedings which threatened to extend beyond the school year, when the availability of School District employees as witnesses would be complicated. Also, the Hearing Officer recognized Student's need for a timely resolution of the issues, especially because reevaluation was contemplated. This is not an abuse of discretion, particularly in light of D.Z.'s failure to explain any harm that she suffered as a result of this procedural ruling. *Cf. First Nat'l Bank of Pike Cnty. v. Dep't of Banking,* 7 Pa.Cmwlth. 603, 300 A.2d 823, 825 (1973) (Mencer, J.) ("[t]he right to limit cross-examination has been recognized in Pennsylvania to be within the sound discretion of the trial judge and absent injury to the party complainant it is not grounds for reversal.")

For all the foregoing reasons, we affirm.

---

1. I emphasize that neither the District, nor the Hearing Officer, has raised the issue of a potential waiver by D.Z.

## ORDER

**AND NOW,** this 27th day of July, 2010, the orders of the Special Education Hearing Officer dated May 14, 2009, at ODR Case # 9532–08–09–AS, and dated June 2, 2009, at ODR Case # 9548–08–09–AS, are **AFFIRMED.**

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent. The Majority's opinion, while economical in terms of these parties' protracted history, ignores the plain statutory mandate at issue, finds waiver where none has been raised or equitably exists, and potentially eviscerates the statutory review scheme governing IEPs and GIEPs without regard to the annual review rights of parents thereunder.

I first note that the Majority finds waiver where none has been raised, and where none can be found in an equitable reading of the record as a whole.[1] The record does indeed establish that D.Z., in her admittedly self-disadvantaged position as a *pro se* party, never directly objected to the Hearing Officer's failure to place a record statement regarding an otherwise qualified interpreter's ability and professional conduct knowledge pursuant to 2 Pa.C.S. § 563(b)(2) at the precise time of the respective interpreters' qualification. However, D.Z.'s repeated and persistent objections throughout the record to the qualifications and efficacy of the two interpreters can easily be read as asserting the substance of such an objection, if not the proper form.[2] *See, e.g.,* Reproduced Record (R.R.) at RR–3, RR–20.

---

2. I also find the Majority's citation to the Federal Court Interpreters Act, and precedents construing the same, unavailing and unpersuasive. The Court Interpreters Act

Secondly on this issue, the Majority states later in its opinion that due process protections are fully afforded to a parent by the General Assembly's provision of the statutory scheme at issue, including Section 563, allowing for interpreters when needed. This is a recognition of due process protection with which I agree. Finding a waiver of the statute's plain and clear mandate for the record statement required by Section 563(b)(2) requires, in the context of the instant challenges, a subsequent examination of the actual effectiveness of the interpreters as challenged by D.Z., as the Majority again properly recognizes. However, the Majority then proceeds to abbreviate any such analysis, in its address of the interpreters' effectiveness, on the basis that D.Z. failed to argue that any actual prejudice resulted from the alleged due process violations. I disagree with this analytical progression on two bases.

Any conclusion by the Majority that D.Z. has failed to show any actual prejudice resulting from the Hearing Officer's exclusion of the statement required by Section 563(2)(b) simply ignores the right implicated: an opportunity to be *heard.* The record is replete, indeed on nearly every page of the transcripts, with D.Z.'s repeated insistence that she is literally not being *heard* as a result of the improperly qualified interpreters' efforts. I can con-

ceive of no more obvious and self-evident actual prejudice shown, in the context of a due process violation allegation, than a record replete with assertions that a party is literally not being heard. In my view, the actual prejudice embodied in not being properly interpreted to the Hearing Officer, in light of the use of statutorily unqualified interpreters, is so obvious as to require no official designation thereof within a brief to this Court, given the record to the matter *sub judice.*[3]

As such, any analysis of the effectiveness of the interpreters challenged herein must begin with an examination of the legal qualifications of the interpreters at issue, which qualifications are defined, in terms of the statute's provision, quite plainly. 2 Pa.C.S. § 101; 2 Pa.C.S. § 563. Under this analysis, as a matter of law, the interpreters are inarguably not qualified without a statement on the record made by the Hearing Officer as to the interpreters' abilities, and as to their reading, understanding, and agreement to abide by the applicable code of professional conduct as mandated by the General Assembly, without exception. *Id.* As a matter of law, then, and without any need for any further or actual showing of actual prejudice, even a perfunctory examination of the interpreters' effectiveness reveals that they are

---

contains no provision equivalent to that of our General Assembly's statutory requirement that a record statement of qualification be made as a mandatory prerequisite to qualifying an "otherwise qualified interpreter" (which type of interpreter also has no equivalent under the Federal Act). Further, the Court Interpreters Act contains an *express provision providing for the waiver of an objection* to the certification or performance of an interpreter; no such express waiver provision exists under the statutory scheme passed by Pennsylvania's General Assembly. Hence, I find the support drawn by the Majority from the entirely dissimilar Federal Court Interpreters unpersuasive.

**3.** I also object to the Majority's conclusion that D.Z.'s perceived failure to show any actual prejudice in light of the Hearing Officer's failure to make the mandated record statement regarding the purported otherwise qualified interpreters renders the Hearing Officer's failure harmless error. Given the fundamental nature of the due process rights implicated herein—namely, and quite literally, the opportunity to be heard—a finding of harmless error serves to eviscerate the plain mandate of Section 563(b)(2), and by extension, eviscerates the very due process rights embodied by that Section as recognized by the Majority.

both not qualified to interpret in a Pennsylvania court absent the record statement required by 2 Pa.C.S. § 563(b)(2). Without such basic legal qualification as mandated by statute, the interpreters cannot be seen as effective as a foundational matter, notwithstanding the interpreters' subsequent efforts in the prior proceedings.

Next, I note my disagreement with the Majority's dismissal of D.Z.'s appropriate design issues regarding the educational plans that have been carried over to subsequent academic years, in the face of the parties' inability to agree on subsequent academic year plans and D.Z.'s concomitant challenges. It is beyond dispute—and D.Z. tacitly admits, in her brief to this Court—that the issue of the appropriate design of Student's IEP and GIEP for the time period from December, 2006, through the completion of the 2007–2008 school year, was litigated in the proceedings that culminated in the previously litigated 2007 IEP Decision and the 2008 GIEP Decision. A review of those prior decisions reveals that all four of the *res judicata* factors listed above are satisfied, in relation to the academic periods addressed in those two prior proceedings. R.R. at RR–150–173. Accordingly, I agree that the Hearing Officer did not err in excluding the issues of IEP and GIEP appropriate design for the school years including, and prior to, the 2007–2008 academic year. Further, the Hearing Officer correctly did not exclude the issue of the implementation of the IEP and GIEP for those school years, as the issue of implementation was not adjudicated in either the 2007 IEP Decision or the 2008 GIEP Decision.

The Hearing Officer's exclusion of the appropriate design of Student's IEP and GIEP for the 2008–2009 school year, however, addresses an issue that was not the subject of the prior IEP and GIEP Decisions. The IEP and GIEP that were the subjects of the 2007 IEP Decision, and the 2008 GIEP Decision, respectively, remained in effect for the 2008–2009 school year. The parties could not agree to any newly designed or proposed IEP or GIEP for the 2008–2009 school year, which D.Z. repeatedly rejected. As the Majority correctly notes, a prior IEP and GIEP in effect at the time of the rejection of, and/or subsequent challenge to, newly proposed plans remains in effect during the pendency of any such rejection and/or challenge. Section 1415(j) of IDEA, 20 U.S.C. § 1415(j); 22 Pa.Code § 16.63(a). I emphasize, however, that while the prior IEP and GIEP remained in effect in the absence of any approval of an IEP and/or GIEP for the school year 2008–2009 pursuant to IDEA and Pennsylvania regulation, no issues involving the implementation or appropriateness of the IEP and GIEP *for the 2008–2009 school year* were addressed or decided in the 2007 IEP Decision, or in the 2008 GIEP Decision. *See* R.R. at RR–157–173.

In its brief to this Court, the District concedes that the 2007 IEP Decision and the 2008 GIEP Decision addressed only the appropriateness of the respective educational plans through the conclusion of the 2007–2008 academic years. Without specific argument addressed towards the 2008–2009 school year, the District merely argues that the prior litigation of the IEP and GIEP issues for prior school years renders any argument directed towards Student's IEP and GIEP[4] barred under the *res judicata* doctrine. I disagree.

---

**4.** The District concedes that D.Z. challenged both the appropriateness, and the implementation, of Student's IEP and GIEP.

A review of the 2007 IEP Decision and the 2008 GIEP Decision plainly reveals that neither of those cases involved, expressly or impliedly, the implementation *or* appropriate design of Student's IEP and GIEP for the 2008–2009 school year. As such, in relation to the 2008–2009 school year, neither the identity of the thing sued upon, nor the identity of the cause of action, are identical with the prior 2007 IEP and 2008 GIEP Decisions, and *res judicata* does not bar their address. *Montour School District v. S.T.*, 805 A.2d 29 (Pa. Cmwlth.2002), *petition for allowance of appeal denied*, 573 Pa. 660, 820 A.2d 163 (2003).

I would reject the District's argument that the mere fact that the prior IEP and GIEP continued to remain in effect as a matter of law renders the prior IEP and GIEP un-challengeable for the 2008–2009 academic year in light of the 2007 IEP and 2008 GIEP Decisions. The District concedes that "educational programming is designed to evolve over time," and it is well established that both federal and Pennsylvania law provide for the review, or challenge, of an IEP and/or GIEP for *every* individual academic year, notwithstanding any prior approval thereof for prior years, in the absence of annual parental approval thereof.[5] Accordingly, the Hearing Officer erred as a matter of law in excluding the issues of IEP and GIEP implementation and appropriateness in relation to the 2008–2009 academic year, and the doctrine of *res judicata* does not bar the instant challenge.

Additionally, one potential example illustrates the frustration that can be wrought to the legislative educational review scheme by the Majority's casting of any carryover educational plan as unassailable in regards to subsequent academic years. Hypothetically, the Majority's holding enables a potentiality wherein an education plan tailored to a younger student—e.g., a plan that concludes that a 4th grade reading level is appropriately designed for a 3rd grade student—remains unassailable in the face of subsequent plan challenges in consecutive academic years, resulting in an application of the *res judicata* doctrine impliedly concluding that the 4th grade reading level remains appropriately designed for a 4th, 5th, or even 12th grade student of previously established advanced reading ability. Such a result is absurd, in addition to frustrating and indeed possibility eviscerating the federal and Pennsylvania provisions for challenges to the design of education plans on a timely, annual basis, allowing for the natural progression of students' academic growth.

Finally, I object to the Majority's failure to address D.Z.'s final issue, challenging the exclusion of certain witnesses and testimony by the Hearing Officer, on the basis that D.Z. failed to make an offer of proof to the Hearing Officer as to the substance of those witnesses' potential testimony. The Hearing Officer excluded 11 of 23 witnesses via email ruling, and without receiving argument on the issue by any party. If the Hearing Officer made those unilateral exclusions without knowledge (or argument thereon) as to the substance

---

**5.** *See* 34 C.F.R. § 300.324 (2006) (providing for, at a minimum, annual review of a student's IEP); 34 C.F.R. § 300.507 (2006) (providing for a parental due process complaint to challenge an educational agency's refusal to change the identification, evaluation, and/or the educational placement of a student subject to an IEP); 22 Pa.Code § 16.32 (provid-ing for, at a minimum, annual GIEP development meetings, including at the request of a parent); 22 Pa.Code § 16.63 (providing for a parental due process hearing on the issues of the identification, evaluation, and/or the educational placement of a student subject to a GIEP).

of that to which they would testify, that could constitute an abuse of discretion, given that lack of any foundational knowledge as a basis for exclusion. If the Hearing Officer did indeed have some basis regarding the witnesses' testimony upon which to base his exclusion, then an offer of proof from D.Z. was not necessary, and the exclusion should be addressed herein. Either a basis for the Hearing Officer's exclusion existed (which basis would also constitute an offer of proof, and would provide this Court with a foundation upon which to review the exclusion), or the Hearing Officer abused his discretion in excluding the witnesses without basis upon an offer of proof. The record contains no indication that an offer of proof was requested, or an opportunity therefor provided to D.Z., by the Hearing Officer at any time prior to his exclusion via email ruling.

I concur in the Majority's remaining analysis not addressed above.

I would vacate and remand for further proceedings, on the primary basis of the Hearing Officer's error as a matter of law in failing to place the statutorily mandated statement regarding otherwise qualified interpreters upon the record, as required by 2 Pa.C.S. § 563(2)(b).